UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SYREETA LASHAWN MCNEAL,　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Case No. 4:23-cv-01732-SEP
　　　　　　　　　　　　　　　　)
VERA L. CALVIN, et al.,　　　　 )
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

**MEMORANDUM AND ORDER**

Before the Court are motions to dismiss filed by AT&T, Inc., Doc. [241]; the Oprah Winfrey Network, LLC and Warner Brothers Discovery, Inc, Doc. [280]; Google LLC and YouTube LLC, Doc. [155]; TikTok Inc., Doc. [159]; CRK Entertainment Inc. and Kingdom Reign Entertainment LLC, Doc. [284], the Orlando Police Department, Doc. [216]; Anthony Lofties, Doc. [143]; Felicia Moore, Doc. [144]; Marcella Boothe, Doc. [202][1]; Joann Jenkins, Doc. [210]; Maurice Scott, Sr., Doc. [244]; and Carlos King, Doc. [286].  For the reasons set forth below, all such motions are granted, and Plaintiff's claims are dismissed in their entirety. In addition, Defendants Sierra L. Moore and Natavia T. Garner are dismissed for insufficient service.  The entries of clerk's default against Donovan R. Frison, Doc. [65], and Melissa S. Scott-Chase, Doc. [17], are set aside and the claims against Frison and Scott-Chase are dismissed.  Finally, Plaintiff is ordered to show cause why Rule 11 sanctions should not issue for her reliance on fake citations, and Natavia Garner and Marcella Boothe are ordered to show cause why their counterclaims, Docs. [196], [297], should not be dismissed for lack of subject matter jurisdiction.

**FACTS AND BACKGROUND**[2]

Pro se Plaintiff Syreeta LaShawn McNeal's 116-page Amended Complaint asserts 14 causes of action against 21 defendants, alleging that she was harassed, defamed, and otherwise harmed by various online commentators and members of the show *Love & Marriage: Huntsville*

---

[1] Pro se Defendant Boothe's Motion to Preclude Improper Joinder, Doc. [202], is construed as a motion to dismiss the claims against her.

[2] For purposes of motions to dismiss, the Court takes the factual allegations in the Amended Complaint, Doc. [112], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

("LAMH").  Doc. [112].  Plaintiff named ten individuals who are online commentators of LAMH ("Content Creator Defendants")[3] and two individuals affiliated directly with LAMH,[4] totaling twelve individual defendants.  Because two individual defendants have already been dismissed for insufficient service,[5] ten individual defendants remain alongside nine organizational defendants:  three employers of the individual defendants (AT&T, Inc., the Oprah Winfrey Network LLC, and Warner Brothers Discovery, Inc., which owns the Oprah Winfrey Network); three of the social media companies on which the individual defendants post content (YouTube, its owner Google, and TikTok); two companies run by one of the individual defendants (CRK Entertainment, Inc., and Kingdom Reign Entertainment); and the Orlando, Florida, Police Department for, among other things, its alleged failures to stop one of the Content Creator Defendants from posting online.  Doc. [112].

Since 2019, Plaintiff has involved herself with the LAMH fanbase by visiting YouTube content creators' channels to "participate[] in public chats and public panel discussion[s] to discuss current events and analyze a television show, Love and Marriage Huntsville."  Doc. [112] at 13 ¶¶ 26-27, *id.* at 16 ¶ 42.; *id.* at 83 ¶ 12.[6]  At the time she filed the Amended Complaint, Plaintiff was a licensed attorney[7] residing in Columbia, Missouri.  Doc. [112] at 3 ¶ 1.  Plaintiff participated in public chats using only her first initial and last name to attempt keep her identity secret, asking YouTube content creators to refer to her only as "Anonymous."  *Id.* at 13 ¶ 27.  According to Plaintiff, she sought to provide information on legal tools to help the public understand how to handle people with narcissistic personality traits.  *Id.* at 13-14 ¶ 29.  Primarily, Plaintiff rallied behind LAMH cast member Melody Shari Rodgers f/k/a Melody Shari Holt following alleged domestic violence and abuse by Rodgers' ex-husband, who Plaintiff alleges "was exhibiting the 10 behavioral traits of being a narcissistic sociopath."  *Id.* at 14 ¶ 30;

---

[3] The Content Creator Defendants include Anthony T. Lofties, Natavia Garner, Marcella I. Boothe, Felicia B. Moore, Joann Jenkins, Sierra L. Moore, Donovan R. Frison, Melissa S. Scott-Chase, Vera Calvin, and Terence Smith.  *See generally* Doc. [112] at 3-9; *see, e.g.*, Doc. [287] at 6 n.1.

[4] Maurice J. Scott is a cast member, Doc. [244-1] ¶ 15, and Carlos R. King is an executive producer, Doc. [286-1] ¶ 12.  Doc. [287].

[5] Vera Calvin and Terence Smith were dismissed on May 2, 2025.  *See* Docs. [140], [169].

[6] Because the paragraph numbering in the Amended Complaint restarts at several points, citations to the Amended Complaint will include both a page number and a paragraph cite.

[7] Plaintiff's law license was suspended on October 10, 2025.  *See* Doc. [315].

a 16 ¶ 41.  Plaintiff alleges that she "participated on panels to give public analysis and tools to help Melody Shari Rodgers . . . escape the potential dangers from her ex-husband and LAMH cast mates on YouTube panel discussions and also paid subscription services (i.e. Patreon)". *Id.* at 14  ¶ 32.  Further, Plaintiff participated in a YouTube live panel discussion "where she explained to the public how to exercise their First Amendment rights (ie. free speech, freedom of assembly, free press and the right to petition the government/corporation for grievances)" to help Rodgers, comparing the situation to the civil rights and women's suffrage movements.  *Id.* at 16 ¶ 42.  In Plaintiff's telling, Melody Rodgers's situation split the LAMH fanbase into two groups: those who supported Rodgers, like Plaintiff, and those who supported her ex-husband, a group allegedly led by Defendants Carlos King and Maurice J. Scott.  *See, e.g.*, *id.* at 18-19 ¶¶ 51-52.

Plaintiff alleges that Defendant Carlos King "plotted with other LAMH cast members," particularly Defendant Maurice J. Scott, "to attack YouTube content creators and subscribers, like the Plaintiff" for the opinions they shared online in support of Rodgers.  *Id.* at 18 ¶ 50.  She alleges that Defendant King worked with a gang to engage in a coordinated effort to "dox, harass, cyber-stalk, threaten, and strike" commentators who spoke in support of Rodgers, including Plaintiff.  *Id.* at 18 ¶ 51; *see also id*. at 24-25 ¶¶ 71-74, at 30-31 ¶¶ 97-99, at 36 ¶¶ 116-17, at 38-39 ¶¶ 124-25, at 42 ¶ 137, at 43 ¶¶ 139-40, at 45 ¶¶ 147-49. The Content Creator Defendants allegedly published McNeal's name, picture, and unspecified "HIPPA [sic] information."  *Id*. at 25 ¶¶ 73-74, at 45 ¶ 147.

Plaintiff brings the following 14 causes of action against all remaining 19 defendants.  *Id.* at 3-10 ¶¶ 2-22; *id.* at 46-115.

1. Violation of the First Amendment of the U.S. Constitution

2. Violation of the Federal Trade Commission Act (15 U.S.C. § 45)

3. Violation of Five (5) Rights of Consumers under the Consumer Protection Act of 1986 (15 U.S.C. §§ 41-58)

4. Invasion of Privacy - Public Disclosure of Private Facts

5. Invasion of Privacy - False Light

6. Stalking of a Federal Attorney (18 U.S.C. § 2261A; Mo. Rev. Stat. § 565.225)

7. Cyber-Harassment (18 USC § 2261A; Mo. Rev. Stat. § 565.090)

8. Conspiracy (18 U.S.C. § 241; Mo. Rev. Stat § 562.014)

9.   Defamation of Plaintiff's Profession, Trade, or Business

10.   Libel per se

11.   Slander per se

12.   Intentional Infliction of Emotional Distress

13.   Negligent Infliction of Emotional Distress

14.   Filing False and Fraudulent Bar Complaints and Obtaining Missouri Supreme Court Disciplinary Hearing Audio Under False Pretenses

Because two individual defendants have been dismissed for insufficient service, Vera L. Calvin and Terence B. Smith,[8] Doc. [169], and two more are dismissed in this Order for insufficient service, Sierra L. Moore and Natavia T. Garner, eight individual natural person defendants remain:  Anthony T. Lofties, Marcella I. Boothe, Maurice J. Scott, Sr., Carlos R. King, Felicia B. Moore, Joann A. Jenkins, Donovan R. Frison, and Melissa S. Scott-Chase,[9] in addition to the nine aforementioned organizational defendants.  Motions to dismiss have been filed on behalf of all remaining defendants[10] except two individual defendants for whom clerk's entries of default have been entered:  Donovan R. Frison, Doc. [65], and Melissa S. Scott-Chase, Doc. [17].  Two individual defendants have brought counterclaims, Natavia T. Garner, Doc. [196], and Marcella I. Boothe, Doc. [297].  Plaintiff has moved to dismiss both.  *See* Docs. [208], [310].

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[8] Plaintiff named Terence B. Smith in her Amended Complaint, Doc. [112], but his name is spelled Terrence B. Smith in the Court's Order of Dismissal, Doc. [169].  In this Order, the Court refers to him as he is named in the Amended Complaint.

[9] In her answer to the original complaint, this defendant asserted that her name is Melissa Chase Scott. *See* Doc. [18].  In this Order, the Court refers to her as she is named in the Amended Complaint.

[10] Marcella Boothe's Motion to Preclude Improper Joinder, Doc. [202], is construed as a motion to dismiss.  Boothe requests that the Court prevent Plaintiff from naming her in future filings and asserts that "Plaintiff's inclusion of Boothe in this litigation serves no legitimate legal purpose."  Doc. [202] at 5.

4

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pleaded factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  A plaintiff's allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The well-pleaded facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Although courts must accept all well-pleaded factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Generally, a pro se complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  While the Court liberally construes a pro se plaintiff's allegations, *Walker v. Reed*, 104 F.3d 156, 157 (8th Cir. 1997), the lower pleading standard applies to pleadings that were drafted by non-lawyers.   Filings by lawyers representing themselves need not be reviewed under a relaxed standard. *Weimer v. Seterus Inc.*, 2014 WL 12634291, at *3 (W.D. Mo. Sept. 18, 2014).

### DISCUSSION

Because Plaintiff brings every claim against every defendant and incorporates by reference the entirety of her Amended Complaint into every claim, the Court must disentangle her allegations and separate her claims that merit genuine review from those that do not.  This

practice is known as "shotgun pleading." *See, e.g.*, *Moore v. Compass Grp. USA, Inc.*, 2022 WL 4598558, at *10 (E.D. Mo. Sept. 30, 2022) (quoting *Chole v. Bos. Sci. Corp.*, 2020 WL 1853266, at *2 (E.D. Mo. Apr. 13, 2020) ("[A] complaint engages in shotgun pleading if it 'brings every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to put the various defendants on notice of the allegations against them.'") (*accord Boggs v. Am. Optical Co.*, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015)). "Shotgun pleading is especially problematic when pleading numerous causes of action[ ] with substantially different elements," *Sagez v. Glob. Agr. Invs., LLC*, 2015 WL 1647921, at *4 (citing *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016 (S. D. Iowa 2009)) (citation modified), because such complaints "shift onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support," *id.* (quoting *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)).

Having disentangled Plaintiff's poorly pleaded claims, the Court addresses them in the following order:  First, the Court dismisses the claims against the organizational defendants on various legal grounds.[11]  Second, the Court dismisses Defendants Natavia Garner and Sierra Moore for insufficient service.  Third, the Court disposes of Plaintiff's legally defective non-tort claims.  Fourth, the Court dismisses all of the tort claims failure to state a claim.  Next, the Court explains why all of Plaintiff's claims will be dismissed with prejudice and orders Plaintiff to show cause why she should not be sanctioned under Rule 11 for relying on fake case citations and mischaracterizing case law.  Then the Court orders Defendants Garner and Boothe to show cause why their counterclaims should not be dismissed for lack of subject matter jurisdiction. And finally, the Court sets aside the clerks entries of default against Donovan Frison and Melissa Scott-Case and dismisses the claims against them as well.

---

[11] While some of the organizational defendants also challenge this Court's personal jurisdiction, the Supreme Court has counseled that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (per curiam) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 100-01 n. 3 (1998)).  Because none of the organizational defendants is a proper defendant for other threshold reasons, the Court does not reach their objections to personal jurisdiction.  *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 789, 792 (8th Cir. 2010) (affirming district court's decision to dismiss defendant with prejudice under Section 230 rather than for lack of personal jurisdiction); *Tenet v. Doe*, 544 U.S. 1, 6, n.4 (2005) (dismissal due to categorical bar on suing the U.S. government for such claims "represents the sort of 'threshold question' [that] . . . may be resolved before addressing jurisdiction.").

I.    **Preliminary Dismissals**

   A.  **Plaintiff's claims against the organizational defendants all fail.**

      1.  *Plaintiff fails to state a claim against AT&T Inc.*

Plaintiff alleges that former Defendant Vera L. Calvin[12] made harassing posts online about Plaintiff while employed by AT&T Inc., using information she supposedly obtained from her employer.  Doc. [112] at 9 ¶ 21; *id.* at 69 ¶¶ 12-13.  Plaintiff further alleges that AT&T Inc. is responsible for the acts of its employees under agency law.  *Id.* at 60 ¶ 21.  There are a number of obstacles to Plaintiff's claims against AT&T Inc., but two are sufficient to justify dismissal: She does not plausibly allege that AT&T Inc. itself committed any misconduct, nor does she plausibly allege that Calvin acted as an agent of AT&T Inc.

   Regarding AT&T Inc., Plaintiff alleges:

- "Defendant Vera Lynn Calvin (Pretty Brown Eyez (PBE)) has made a majority of-her posts doxxing, stalking, harassing and threatening the Plaintiff while working for Defendant AT&T, Inc. from October 22, 2023 to present," and

- Calvin "is the main person who provides information from her employer, AT&T, Inc., to assist the gang," in harassing supporters of Melody Shari Rodgers.

Doc. [112] at 69 ¶¶ 12-13.  Such allegations are insufficient to state a claim of any kind against AT&T Inc.  Plaintiff does not specify what information Calvin allegedly obtained, how she allegedly obtained it, or what role AT&T allegedly played in her obtaining it.  She identifies no law that AT&T allegedly broke or right of Plaintiff's AT&T Inc. allegedly violated.

   Nor are such allegations sufficient to support an agent-principal relationship between Calvin and AT&T Inc.  "[W]here an employer-employee relationship exists,[13] the doctrine of *respondeat superior* holds that the employer is vicariously liable for the injury-causing conduct of an employee *done within the course and scope of the employment*."  *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 (Mo. banc. 2014) (emphasis added) (citing

---

[12] Dismissed on May 2, 2025, for insufficient service.  *See* Docs. [140], [169].

[13] Another obstacle to Plaintiff's claim is that AT&T Inc. disclaims being anyone's employer.  *See* Doc. [241-1] at 2; Doc. [241-2] ¶ 4.  The Court does not reach that issue in light of the dismissal on other grounds.

*Cluck v. Union Pac. R.R. Co.,* 367 S.W.3d 25, 29 (Mo. banc 2012)).[14]  Plaintiff has not alleged that any of Calvin's allegedly harmful conduct was done "within the course and scope" of her employment with AT&T Inc.  *See* Doc. [269-1] (AT&T attestation that Calvin never used AT&T systems to gain information for personal use); Doc. [269-3] (email from AT&T senior legal counsel regarding same); *Arnold v. AT&T, Inc.*, F. Supp. 2d 825, 835 (E.D. Mo. 2012) (discussing requirements to hold parent company liable for acts of subsidiary).

Because Plaintiff fails to state a claim against AT&T Inc., her claims against AT&T Inc. are dismissed.

### 2.  *The Orlando Police Department is not subject to suit.*

Under Florida law, the Orlando Police Department has no independent legal existence separate from the City of Orlando and therefore is not subject to suit.  *See Fulkerson v. Russell*, 2017 WL 6041954, at *3 (M.D. Fla. Dec. 6, 2017) (collecting cases); *see also Florida City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. Dist. Ct. App. 1995); *Mann v. Orange County Sheriff's Office*, 946 F. Supp. 962, 971 (M.D. Fla. 1996).  "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."  *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).  Because the Orlando Police Department is not a suable entity, Plaintiff's claims against it are dismissed with prejudice.[15]

### 3.  *Plaintiff fails to state a claim against the Oprah Winfrey Network, LLC and Warner Brothers Discovery, Inc.*

Plaintiff pleads few facts connecting the Oprah Winfrey Network, LLC (OWN) or its parent company, Warner Brothers Discovery, Inc. (WBD) to her claims.  Most of Plaintiff's allegations involving OWN and WBD include only background information.  *See, e.g.*, Doc. [112] at 16 ¶ 39 (corporate structure of OWN and WBD), 12 ¶¶ 24-25 (LAMH was broadcast on OWN, which is owned by WBD).  Only two of Plaintiff's allegations of wrongdoing arguably

---

[14] Although the Court cites Missouri law, this element of a *respondeat superior* claim derives from the common law and Plaintiff has to satisfy it no matter which state's law her claims arise under.  *See* § 4:3. Respondeat Superior, 1 American Law of Torts § 4:3 (2026) (collecting cases).

[15] In order for Plaintiff to hold the City of Orlando responsible for actions of its police officers, *see* Doc. [245] at 4-5, she would have to show that her injury was caused by a municipal policy or custom.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Plaintiff has made no allegation that could give rise to liability under *Monell*.

implicate OWN and WBD.  First, Plaintiff "believes her personal identity" and "HIPPA [sic] protected information [was] broadcast to millions of viewers" without compensation or authorization "through social media venues, . . . Oprah Winfrey Network LLC, owned by Warner Bros. Discovery, Inc. due to Defendant Carlos King's plot against Plaintiff being executed since July 2023 to present."  Doc. [112] at 58-59 ¶ 15.  Second, Plaintiff believes that OWN and WBD "are responsible for the actions of their employees, agents, partners under agency law (i.e., actual and apparent authority) and principles of *respondeat superior* holding an employer or principal liable for the wrongful acts of an employee or agent within the scope of employment or agency." *Id.* at 60 ¶ 21.

Such conclusory allegations fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 12(b)(6).  Plaintiff asserts that her HIPAA-protected information was broadcast to millions of viewers without identifying what information was shared, when or how it was broadcast, or what role OWN or WBD played in the alleged broadcast.  She also alleges *respondeat superior* liability without even naming a specific employee, never mind pleading that any employee of OWN or WBD caused her harm "within the course and scope" of his or her employment with either entity.  *See supra* Section I.A.1.

The Amended Complaint lacks sufficient factual matter which, accepted as true, states a claim to relief that is plausible on its face against OWN or WBD.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Because Plaintiff fails to state a claim for which relief can be granted against OWN or WBN, her claims against both are dismissed.

### 4. *Plaintiff fails to state a claim against Kingdom Reign Entertainment LLC and CRK Entertainment Inc.*

Kingdom Reign Entertainment LLC is a production company founded by Defendant Carlos King credited as a producer of LAMH.  *See* Doc. [286-1] ¶¶ 8, 12.  CRK Entertainment Inc. is a company formed by Defendant Carlos King to contract with third parties for his television and other appearances.  *See id.* ¶¶ 15-17.  Few of Plaintiff's allegations involve Kingdom Reign or CRK, and those that do just provide background.  *See, e.g.*, Doc. [112] at 8 ¶ 18, at 12 ¶ 23(r) (CRK was created by King, is incorporated in Georgia, and has a principal place of business in Florida), at 7-8 ¶ 17, at 12 ¶ 23(q) (Kingdom Reign was created by King,

produces the show LAMH, is incorporated in Georgia, and has a principal place of business in California), at 16 ¶ 40 (CRK was formed by King and registered in Georgia).

The only other allegations involving Kingdom Reign or CRK are unsupported legal conclusions.  First, Plaintiff alleges that CRK and Kingdom Reign "would be responsible for any publication of Plaintiff's identity and personal information on LAMH and Carlos King's podcast that would reach millions of viewers."  Doc. [112] at 58 ¶ 14.  Second Plaintiff alleges that Kingdom Reign and CRK "are responsible for the actions of their employees, agents, partners under agency law (i.e., actual and apparent authority) and principles of *respondeat superior* holding an employer or principal liable for the wrongful acts of an employee or agent within [the] scope of employment or agency[.]"  Doc. [112] at 60 ¶ 21.

Plaintiff has not provided sufficient information to state a valid claim against Kingdom Reign or CRK.  The Amended Complaint lacks supporting factual allegations to establish liability of either Kingdom Reign or CRK under any of Plaintiff's legal theories.  Even construing the Amended Complaint to allege that Kingdom Reign and CRK are responsible for any bad acts of Defendant King, Plaintiff does not plead adequate facts to establish a principal-agent relationship for the purposes of *respondeat superior* liability.  *See supra* Section I.A.1; *Cent. Tr.*, 422 S.W.3d at 323.  And even if she had, as set forth in Section II.2.D, below, she fails to allege that Defendant King committed any legally actionable wrongful acts.  Thus, Plaintiff's claims against Kingdom Reign and CRK are dismissed.

### 5. *Google LLC, YouTube LLC, and Tik Tok Inc. are shielded from liability by Section 230.*

Broad federal statutory immunity protects internet platforms like YouTube and Tik Tok from liability for content created by third parties.  Plaintiff's claims against YouTube LLC, its parent company Google LLC, and Tik Tok Inc. are categorically barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230" or the "CDA").  Section 230 immunizes "interactive computer services" like YouTube and Tik Tok against any claim that seeks to treat them as the "publisher or speaker" of information posted online by third parties.  Courts routinely apply Section 230 to dismiss claims against online service providers like YouTube and Tik Tok for hosting disputed content created by third parties.  *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 790–92 (8th Cir. 2010); *Winter v. Facebook, Inc.*, 2021 WL 5446733, at *1, *6 (E.D. Mo. Nov. 22, 2021) (dismissing gross negligence claim under Section 230 related to

10

"TikTok's failure to take down [] false abusive posts and/or posts containing [P]laintiffs [sic] personal identifying information for the purposes of stalking and harassment.") (alteration in original). Applying Section 230 is particularly appropriate at the motion to dismiss stage because Section 230 provides "an *immunity from suit* rather than a mere defense to liability" that is "effectively lost if a case is erroneously permitted" to proceed. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting *Brown v. Gilmore,* 278 F.3d 362, 366 n.2 (4th Cir. 2002) (citation modified in *Nemet*).

Plaintiff alleges that Tik Tok Inc. is liable for third-party content "published . . . on [a user's] TikTok, Inc. Channel" specifically because "TikTok, Inc. did not take any action against [the user]." Doc. [112] at 36-37 ¶¶ 116, 121. Plaintiff levels similar allegations against YouTube, complaining that YouTube declined to remove user-provided content that Plaintiff requested removed. *Id.* at 31-32 ¶¶ 102, 105. Likewise, Plaintiff sought assistance from YouTube's and Google's legal support teams to have former defendant Calvin suspended from the YouTube platform. *Id.* at 32-33 ¶ 105. In her Amended Complaint, Plaintiff acknowledges that social media platforms like YouTube and Tik Tok generally "have broad immunity for protection for private blocking and screening of offensive material under 47 U.S.C. § 230." *Id.* at 47-48 ¶ 7. She nonetheless argues that YouTube and Tik Tok do not qualify for Section 230 immunity here. Those arguments fail.

Section 230 contains three very limited exceptions. It does not limit (1) certain laws regarding intellectual property, (2) the Electronic Communications Privacy Act of 1986 and "similar" laws, or (3) laws that concern sex trafficking. 47 U.S.C. §§ 230(e)(2), (e)(4), (e)(5). *See, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) (Anti-Terrorism Act); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1266 (D.C. Cir. 2019) (Lanham Act and Sherman Act). None of the exceptions applies here. Plaintiff's attempts to argue that service providers should be held liable under agency principles likewise fail. The content uploaded by users cannot be attributed to internet service providers based on the theory that users are "agents" of the websites they use. *See E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020) (allegations that users "were paid to post and were 'volunteers, employees, servants, contractors or agents of [website defendant]'" were insufficient to make website responsible for "creating or developing" those users' posts under § 230).

11

A "complaint about [alleged] selective enforcement of content standards is precisely the type of claim Congress intended to preempt in § 230(c)(1)." *Winter*, 2021 WL 5446733 at *5. And "Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content." *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1050 (E.D. Mo. 2011) (quoting *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *see also Zeran v. America Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997) ("Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA.").

Because Section 230 of the Communication Decency Act bars Plaintiff's claims against YouTube, Google, and Tik Tok, those claims are dismissed with prejudice.

## B. Defendants Garner and Moore are dismissed for improper service.

### 1. Defendant Natavia T. Garner is dismissed for legally defective service.

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "If a defendant is improperly served, a federal court lacks jurisdiction over the defendant," *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) (citation omitted); *Sieg v. Karnes,* 693 F.2d 803, 807 (8th Cir. 1982)), even if the defendant "had actual notice of the lawsuit," *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 885-86 (8th Cir. 1996) (citing *Printed Media*, 11 F.3d at 843).

Service of a complaint is governed by Rule 4 of the Federal Rules of Civil Procedure. Service on an individual may be achieved by the individual being served personally, by leaving a copy of the summons and complaint at the person's residence with a suitable person who resides there, by delivering the summons and complaint to an agent legally authorized to receive them for such purposes; or by a method approved under state law in the state where the district court is located or where the individual is served. FED. R. CIV. P. 4(e). Pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

The record lacks sufficient proof of proper service of a summons and Amended Complaint upon Defendant Natavia T. Garner to satisfy the Federal Rules of Civil Procedure. Plaintiff filed her original complaint on December 29, 2023, naming Ms. Garner among other

12

defendants.  Doc. [1].  On January 21, 2025, the Court ordered Plaintiff to serve remaining un-served defendants by February 17, 2025, instructing that failure to do so would result in dismissal of the un-served defendants without prejudice.  Doc. [31].  On February 17, 2025, Plaintiff filed a summons allegedly returned executed for Ms. Garner, but it shows that service was executed only upon the registered agent of Citgo Petroleum Corporation by delivering the summons and Amended Complaint to George Martinez at an address in Dallas, Texas.  Doc. [55].  Though the affidavit of service states that Citgo's Registered Agent is "authorized to accept service on behalf of Natavia Garner," Doc. [55], the Court is not bound to accept that as true.  *See LNV Corp. v. Robb*, 843 F. Supp. 2d 1002, 1003 (W.D. Mo. 2012) (filed return of service is "prima facie proof of its contents").

According to Ms. Garner's pro se Motion to Dismiss, Doc. [148], she resides in Detroit, Michigan, and Citgo Petroleum is neither her employer nor her authorized agent, so Plaintiff's service was improper.  In her pro se Motion to Compel Proof of Service and for Sanctions for Misrepresentation of Service, Doc. [170] ¶ 1, Ms. Garner states that she has not been affiliated with Citgo Petroleum for over nine years.[16]  In response, although Plaintiff contests whether Ms. Garner is still employed with Citgo, she concedes that Ms. Garner lives in Michigan and points to the fact that Citgo has 327 locations in Michigan.  Doc. [182] at 7.  Plaintiff also alleges that online background report services Instant Checkmate, Inc., and Rocketreach.com both list Ms. Garner as a Shift manager at Citgo Petroleum.  Doc. [182] at 4.

Plaintiff's responses are not sufficient to establish that Citgo Petroleum is an agent legally authorized to receive service on Ms. Garner's behalf.  Though Plaintiff is correct that Federal Rule of Civil Procedure 4(e)(2) permits (A) personal service to the individual, (B) service at the individual's dwelling with someone who suited there, or (C) service on an authorized agent, the registered agent for an employer is not the same as an authorized agent for an individual.  The filed return of service may be "prima facie proof of its contents," see *LNV Corp.*, 843 F. Supp. 2d at 1003, but it is not proof that service was effected by a legally sufficient

---

[16] Although not styled as affidavits, both of Defendant Garner's pro se filings aver provable facts and are signed electronically by Ms. Garner, and one acknowledges the obligations of parties under Federal Rule of Civil Procedure 11 to "ensure that factual contentions have evidentiary support."  *See* Doc. [148] ¶ 6. The Court thus construes them as affidavits for the purposes of its evaluation of service of process.  *See LNV Corp.*, 843 F. Supp. 2d at, 1005 ("Weighing and evaluating affidavits is the accepted procedural method of dealing with motions challenging service of process.").

means under federal or state law.  Plaintiff's claims against Natavia T. Garner are thus dismissed under Federal Rule of Civil Procedure 12(b)(5) for insufficient service.  Ms. Garner's motion to dismiss, Doc. [148], is granted, and her other motions are denied as moot.  Docs. [149], [170], [191], [192].

### 2. *Defendant Sierra Moore is dismissed for failure to effect timely service.*

Like Ms. Garner, Sierra Moore was never served by Plaintiff.  Plaintiff sought to add Sierra Moore as an additional defendant named in her Amended Complaint, which she filed on April 22, 2025.  Docs. [112], [116].  The time for Plaintiff to effect service under Federal Rule of Civil Procedure 4(m) passed on July 21, 2025, 90 days after she filed the Amended Complaint. Plaintiff has not filed proof of service for Sierra Moore.  On February 4, 2026, the Court ordered Plaintiff to show cause within 14 days why Sierra Moore should not be dismissed under Federal Rule of Civil Procedure 4(m) for failure to effect timely service of process upon her.  To date, Plaintiff has not responded to the Order or shown good cause for her failure to timely serve Sierra Moore.  Plaintiff's claims against Sierra Moore are thus dismissed under Federal Rule of Civil Procedure 4(m) for failure to effect timely service.

### C. Seven of Plaintiff's 14 claims suffer from fundamental legal defects.

### 1. *Count 1 fails because private actors can't violate First Amendment rights.*

Plaintiff's first count alleges curtailment of her rights under the First Amendment of the United States Constitution under 42 U.S.C. § 1983.  *See* Doc. [112] at 49 ¶ 16 ("Plaintiff believe[s] defendants acted under the 'color of law' and/or in concert with state actors and their employers/principals to infringe upon Plaintiff's constitutional rights."), at 49 ¶ 17 ("Since July 2023, the defendants infringed upon Plaintiff's constitutional rights to free speech, freedom of assembly, free press, and right to petition the government/corporation for grievances as she tried to participate in public social media panels (i.e. YouTube, LLC).").

To state a claim for a constitutional violation under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (citation modified). Plaintiff fails to sufficiently allege either element.

First, "[o]nly a state actor can face § 1983 liability for acting under color of state law." *Id.*  Plaintiff does not allege that any state actor infringed upon her First Amendment Rights.

The only government actor named in the Amended Complaint, the Orlando Police Department, is not an independent entity subject to suit, *Fulkerson v. Russell*, 2017 WL 6041954, at \*3, as noted above. *See supra* Section I.A.2. Although Plaintiff baldly asserts that she "believe[s] defendants acted under the 'color of law' and/or in concert with state actors," Doc. [112] at 49 ¶ 16, she alleges no facts to support those legal conclusions, and the Court is not bound to accept them as true. *See Twombly*, 550 U.S. at 555.

The Court is similarly not bound to accept McNeal's conclusory allegation that "defendants infringed upon Plaintiff's constitutional rights . . . as she tried to participate in public social media panels (i.e. YouTube, LLC)." Doc. [112] at 49 ¶ 17. Such a nonspecific allegation puts no defendant on notice of what he or she is accused of doing. Nor does it contain sufficient facts to support the elements of any First Amendment violation. *See Crest Constr. II, Inc.*, 660 F.3d at 355. It therefore fails to state a claim for relief under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quoting *Twombly*, 550 U.S. at 557 (citation modified)).[17]

Count 1 is dismissed as to all defendants.

### 2. *Counts 2 and 3 fail because private individuals may not bring claims under the Federal Trade Commission Act.*

In Counts 2 and 3, Plaintiff alleges violations of the Federal Trade Commission Act (FTCA), 15 U.S.C. §§ 41-58. In Count 2, Plaintiff cites 15 U.S.C. § 45, which she claims prohibits unfair or deceptive acts or practices by any person, partnership, or corporation. Doc. [112] at 50 ¶ 3. In Count 3, Plaintiff alleges "Violation of Five (5) Rights of Consumers under the Consumer Protection Act of 1986 (15 U.S.C. §§ 41-58)." Doc. [112] at 1, 50-56. She states that 15 U S.C. § 45f(a)(4) requires "any online marketplace (e.g., Google LLC, YouTube, LLC, TikTok, Inc., etc.) and its social media 'partners' to collect data" and § 45f(a)(4) requires them to protect such data from unauthorized use and disclosure. Doc. [112] at 54. Like many of

---

[17] Plaintiff does include allegations under Count I suggesting that the social media company defendants should be held liable for violating her free speech rights under exceptions to the Communications Decency Act, 47 U.S.C. § 230. *See* Doc. [112] at 48 ¶¶ 8-13 ("Plaintiff believes the facts and circumstances described in the Background Information of the Amended Complaint provides an exception to application of the broad immunity interpretation of Section 230."). As explained in Section I.A.5, above, YouTube LLC, Google LLC, and Tik Tok are protected by Section 230 of the Communications Decency Act for content posted on their platforms and for content moderation efforts. And further, the actions of private companies do not implicate Plaintiff's constitutional right to free speech. *See Lindke v. Freed*, 601 U.S. 187, 195 (2024).

Plaintiff's claims, Counts 2 and 3 lack sufficient factual allegations to state any claim for relief. Plaintiff again states only that "the defendants infringed upon Plaintiff's constitutional rights to free speech, freedom of assembly, free press, and right to petition the government/corporation for grievances as she tried to participate in public social media panels (i.e. YouTube, LLC)" and that she was retaliated against for her social media commentary regarding Love and Marriage Huntsville.  Doc [112] at 52-53, 55.  She fails to provide factual allegations to support any of her legal conclusions, and she fails to make allegations supporting the elements of any legal claim.

Plaintiff's FTCA claims also fail for another reason:  "The FTCA creates no private right of action."  *In re SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019) (citing *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015)).  Only the Federal Trade Commission can enforce the rights Plaintiff seeks to vindicate through Counts 2 and 3.  *Id.* at 963-64 ("Congress empowered the Commission—and the Commission alone—to enforce the FTCA.").  If a "statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (internal quotations omitted) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  Thus, even if Plaintiff had alleged sufficient facts, Counts 2 and 3 would fail to state a viable legal claim.  Plaintiff's FTCA claims are dismissed with prejudice.

### 3. *Counts 6, 7, 8, and 14 fail because they are based on criminal statutes and Plaintiff points to no evidence of legislative intent to create a private right of action.*

Plaintiff alleges violations of the following federal and state criminal statutes in the counts listed below:

6. Stalking of a Federal Attorney (18 U.S.C. § 2261A; Mo. Rev. Stat. § 565.225);

7. Cyber-Harassment (18 U.S.C. § 2261A; Mo. Rev. Stat. § 565.090);

8. Conspiracy (18 U S.C. § 241; Mo. Rev. Stat. § 562.014);

14. Filing False and Fraudulent Bar Complaints and Obtaining Missouri Supreme Court Disciplinary Hearing Audio Under False Pretenses (26 U.S.C. § 7206, 8 U.S.C. § 1324c, and 18 U.S.C. § 35;  Mo. Rev. Stat. § 570.095).

Doc. [112] at 2, 67, 71, 76, 107-14.  Plaintiff acknowledges that several of the cited criminal statutes allow governmental entities to pursue charges, and she does not explicitly claim that the statutes allow any private right of action.  *See* Doc. [112] at 111 ¶¶ 17 (8 U.S.C. § 1324c "list[s] the penalties the U.S. Attorney General can proceed with both civilly and criminally."), at 111

16

¶ 18 (18 U.S.C. § 35 "is a federal statute that allows the federal government to bring forth a civil action or criminal action . . . ."), at 111 ¶ 19 ("RSMo § 570.095 is a Missouri statute similar to the federal statutes noted above."). Nevertheless, she asserts claims on the basis of those statutes on her own behalf.

Under both federal and Missouri law, a criminal statute does not provide a private right of action absent clear legislative intent. *See Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003) ("The touchstone for determining whether a statute confers a private right of action is congressional intent.") (citing *Thompson v. Thompson*, 484 U.S. 174, 179 (1988)); *Sullivan v. City of Univ. City*, 677 S.W.3d 844, 850 (Mo. Ct. App. 2023) ("We decline to depart from the general rule that 'when the legislature has established other means of enforcement, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent.'" (quoting *Johnson v. Kraft Gen. Foods, Inc.*, 885 S.W.2d 334, 336 (Mo. banc 1994)). Plaintiff provides no basis for finding that legislators intended any of the criminal statutes to be enforceable by a private citizen.[18] Claims 6, 7, 8, and 14 are therefore dismissed with prejudice.[19]

## II. Plaintiff's remaining counts—tort claims against individual defendants—all fail to state a claim.

### A. Missouri law governs Plaintiff's tort claims.

Federal jurisdiction over tort claims is based on diversity of citizenship. District courts sitting in diversity apply the choice-of-law rules of the state where they sit. *Whirlpool Corp. v.*

---

[18] At least as to the federal statutes, there is abundant case law to the contrary. *See, e.g.*, *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under [18 U.S.C.] § 241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (only federal prosecutors can bring complaints under 18 U.S.C. §§ 241-42; the "statutes do not give rise to a civil action for damages"); *Storm-Eggink v. Gottfried*, 409 F App'x 426, 427 (2d Cir. 2011) ("nothing in the language or structure of [18 U.S.C.] § 241 suggests that Congress intended to create a private right of action"); *Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) (nothing in the plain language of 18 U.S.C. § 2261A indicates "that it is more than a bare criminal statute"); *Harris v. United States*, 686 F. App'x 895, 899 (Fed. Cir. 2017) (§ 2261A is a criminal statute that does not mandate money damages); *Nawrocki v. Bi-State Dev.*, 2018 WL 4562908, at *5 (E.D. Mo. Sept. 24, 2018) (same and collecting cases).

[19] Plaintiff also may not initiate a prosecution under a criminal statute. A "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). "Whether to prosecute and what charge to file . . . are decisions that generally rest in the prosecutor's discretion." *Id.* at 867 (quoting *United States v. Batchelder,* 442 U.S. 114, 124 (1979).

17

*Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the "most significant relationship" to the occurrence and the parties.  *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004) (citing *Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. banc 1992)).  Missouri, adopting the Restatement (Second) of Conflict of Laws, requires consideration of four factors in determining the applicable law for tort actions: (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." *Fuqua Homes*, 388 F.3d at 621 (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

"The Missouri Supreme Court has stated that in a defamation case where there is widespread dissemination of the allegedly defamatory matter, such as there was via the internet in the case before us, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Fuqua Homes*, 388 F.3d at 622 (citing *Elmore v. Owens–Illinois, Inc.,* 673 S.W.2d 434, 436–37 (Mo. banc 1984)).  This is because "defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence." *Id.* at 622 (quoting *Elmore*, 673 S.W.2d at 437).  In reaching its conclusion, the court in *Elmore* cited the Restatement (Second) of Conflict of Laws § 150 (1971), which notes a presumption that the defamed individual's domicile is the state with the most significant relationship. *See Elmore*, 673 S.W.2d at 436.

For similar reasons, Missouri law also governs the other tort claims at issue.  For tort claims, Missouri's choice-of-law formulation "essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994); *see also* Restatement (Second) of Conflict of Laws § 146 (1971); *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014); *Thompson*, 833 S.W.2d at 870.  Here, Plaintiff alleges she was injured in Missouri, where Plaintiff is domiciled, though the conduct causing the injury occurred in a number of states, as each individual defendant is a citizen of a different state.  Because the relationship between the parties is entirely online and through their cell phones, the Court determines that Missouri has the most significant relationship to the occurrences and parties at issue here. *Fuqua Homes*, 388

18

F.3d at 621.  Accordingly, Missouri law governs. The Court, therefore, must apply Missouri law "as declared by the Supreme Court of Missouri." *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 728 (8th Cir. 2011).  "If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Eubank v. Kan. City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010).

### B.  Only certain allegations are relevant to the remaining claims.

The following facts are relevant to the disposition of Plaintiff's remaining claims.[20]  The Court attempts to recite the facts in chronological order with maximum clarity, despite many of Plaintiff's factual allegations lacking such specifics as who made a given statement, when the statement was made, and what exactly was said.  Additionally, the Court is doing its best to identify which factual allegations are relevant to which claims despite Plaintiff incorporating by reference all of her factual allegations in every claim against every defendant, and often referring generally to allegations "as described in the Background Information of the Amended Complaint from July 2023 to present." *See, e.g.*, Doc. [112] at 93 ¶ 1, at 60 ¶ 24.  And many of Plaintiff's factual allegations repeat conclusory assertions that "these defendants" have insulted, "doxed," or defamed her in ways that she found outrageous, distressing, and/or intentional "from July 2023 to the present." *See, e.g.*, *id.* at 60 ¶¶ 23-24, at 84 ¶ 17.

### 1. *Plaintiff began anonymously commenting on LAMH on YouTube in 2019 and now complains that other commentators have doxed and defamed her.*

Plaintiff began engaging in the LAMH online fandom and speaking publicly about the show in 2019.  In Plaintiff's words, she has "participated in public chats and public panel discussion to discuss current events and analyze a television show, Love and Marriage Huntsville." *Id.* at 13 ¶ 26.  For example, Plaintiff "appeared on a You Tube live panel discussion held by Desilva Silver where she explained to the public how to exercise their First Amendment rights (i.e. free speech, freedom of assembly, free press and the right to petition the government/corporation for grievances) under the U.S. Constitution." *Id.* at 16 ¶ 42.  Plaintiff became concerned with alleged domestic violence against LAMH cast member Melody Rodgers

---

[20] The relevant facts are recited only insofar as they relate to the remaining defendants, except where it is necessary to recite facts relating to dismissed defendants to understand the claims applicable to the remaining defendants.

and began speaking out "on panels to give public analysis and tools" to influence Rodgers' "escape." *Id.* at 14-15 ¶¶ 30-33. According to Plaintiff, at least one video she participated in "ignited the creation of Change.org petitions." *Id.* at 16 ¶ 42. Plaintiff involved herself in the LAMH fanbase on behalf of Rodgers and opposed those who opposed Rodgers, including Defendant Maurice J. Scott. Plaintiff participated in YouTube live broadcasts to provide "analysis of potential legal actions," *id.* at 22 ¶ 64, and to expose "the significant criminal background of Defendant Maurice J. Scott" to provide insight to the public regarding his eligibility to practice law, *id.* at 23-24 ¶ 68-69. In sum, Plaintiff established herself as a known commentator of LAMH and related legal issues through many appearances on the YouTube channels of LAMH Content Creators over the course of several years.

Plaintiff made some efforts to conceal her identity. "Plaintiff only provided her first initial and last name in public chats and asked YouTube Content Creators to refer to her as 'Anonymous' to keep anonymity and protect her legal identity." *Id.* at 13 ¶ 27. But she did provide the name "S. McNeal" in public chats and panel discussions on YouTube and conducted legal analyses suggesting that she might be a lawyer. *See, e.g.*, *id.* at 95 ¶ 16. For example, on May 19, 2023, Plaintiff participated in a public YouTube Live done by YouTube Content Creator Aunt Ann to provide "analysis of potential legal actions" that LAMH cast member Melody Rodgers could take to combat an alleged revenge porn plot, *id.* at 22 ¶ 64; on June 19, 2023, "Plaintiff participated as a panelist on YouTube Content Creator Black Titanic's public broadcast to give insight as to implication of [LAMH cast member Maurice Scott's] potential criminal records," *id.* at 23-24 ¶¶ 68-69; and on October 2023, Plaintiff "participated in Desilva Silver's YouTube panel discussion and paid subscription service explaining agency law" and discussed a "fiduciary duty of loyalty that would arise with potential conflict of interest," *id.* at 28 ¶ 89.

In connection with Plaintiff's public appearances, her fellow Content Creators began to dredge up information about Plaintiff and comment publicly on her qualifications and mental health. In particular, the Content Creator Defendants shared information about Plaintiff's disciplinary history with the Missouri Supreme Court. As relevant here, on September 15, 2020, The Missouri Supreme Court suspended Plaintiff's law license indefinitely. *In re: Syreeta L.*

*McNeal*, SC98353 (Mo. 2020).[21]  An audio recording of the Plaintiff's disciplinary hearing is publicly available online on a webpage hyperlinked in her order of suspension.  *Case Summaries for September 1, 2020*, MISSOURI COURTS, https://www.courts.mo.gov/page.jsp?id=163153.  The related case summary states that an independent psychiatrist examined Plaintiff and opined that Plaintiff "has certain mental disorders that substantially contributed to her misconduct but that are treatable through therapist and medication," and that Plaintiff was unlikely to engage in similar conduct after treatment and education.  *Id.*  On June 14, 2022, Plaintiff's law license was reinstated and she was placed on probation for two years.  *In re: Syreeta LaShawn McNeal*, SC99182 (Mo. 2022).  On October 10, 2025, the Missouri Supreme Court again suspended Plaintiff's law license pending final disposition of her disciplinary proceeding.  *In re: Syreeta LaShawn McNeal*, SC101292 (Mo. 2025).

Plaintiff complains that defendants have revealed personal information about her, a practice she labels "doxing."  Plaintiff alleges that the individual defendants have "collectively disseminated Plaintiff's governmental name, picture, and HIPPA [sic] protected information to a significant group of people (possibly in the millions) on Google LLC, YouTube, LLC and TikTok, Inc. and other social media accounts."  Doc. [112] at 57-58 ¶ 10.  Plaintiff complains that "[i]n July 2023, Defendant Anthony Lofties doxxed Plaintiff" using her subscriber information and "contacted people from St Louis, MO to dox [her]."  *Id.* at 96 ¶ 19.  On July 25, 2023, Plaintiff alleges that Natavia Garner, Felicia Moore, and Sierra Moore conducted a YouTube Live stream "where they allowed panelists to publish Plaintiff's full government name in their chat."  *Id.* at 24 ¶ 72.  Further, on July 28, July 31, and August 2, 2023, Plaintiff alleges that Joann A. Jenkins conducted YouTube Live stream with Donovan Rae Shawn Frison "to publish a Columbia, MO article pertaining to the Plaintiff, Plaintiff's Linked-In profile, Plaintiff's picture, and other information."  *Id.* at 25 ¶ 73.  On July 30, 2023, Plaintiff asserts that Defendant Melissa S. Scott-Chase conducted a YouTube Live stream in which she "allowed a panelist to dox the Plaintiff by publishing her full government name as part of the planned attack by the gang."  *Id.* ¶ 74.

Plaintiff also complains about negative comments made about her online.  Plaintiff asserts that from July 2023 to present "[t]hese defendants have called Plaintiff a 'fake lawyer,

---

[21] "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

21

fake bankruptcy attorney, mentally unstable, a fraudulent attorney, attorney facing disbarment for false and fraudulent charges these defendants filed, etc...' on public social media accounts like YouTube, LLC, TikTok, Inc. which are not true." *Id.* at 60 ¶ 23.  Plaintiff does not allege who made any particular statement, when, or how.  *See, e.g., id.*; *id.* at 104 ¶ 22 ("Since July 2023, these defendants would do social media lives, written Community Posts, and make oral remarks stating the Plaintiff was a 'fake attorney').  But Plaintiff alleges that statements made about her on Content Creator Defendants' YouTube livestreams and other social media accounts have "reached millions of people." *Id.* at 91-92 ¶ 15.

### 2. *Plaintiff sought to prevent Defendant Calvin from publicizing her attorney disciplinary hearing via a restraining order and sought medical treatment when Calvin published the recording on YouTube.*

October 2023, Plaintiffs' relationship with fellow LAMH commentators soured further. In particular, Plaintiff reports negative interactions with Vera Calvin and Natavia Garner, who are both now dismissed from the case.  On October 25, 2023, Plaintiff sent Vera Lynn Calvin a letter to her Orlando, Florida, address, asking her to cease and desist "further defamation, slander, libel, and doxxing," and informing Calvin that "I have already contacted legal counsel, and they are actively preparing to file civil and criminal charges against you."  Doc. [112-10] at 1.  She alleges that Calvin (screen name "Pretty Brown Eyes") and Garner (screen name "When Tay Talk") acquired the audio recording of her Missouri Supreme Court disciplinary hearing from October 25, 2023, to November 5, 2023, Doc. [112] at 59 ¶ 20, and that Calvin posted to YouTube a preview of a video purporting to publicize Plaintiff's disciplinary hearing audio, set to "premiere" November 8, 2023, *see* Doc. [112-12] at 6 (screenshot dated November 6, 2023).

On November 6, 2023, Plaintiff filed a petition for an ex parte order of protection against Calvin, seeking an order prohibiting Calvin from posting the YouTube video she had previewed regarding Plaintiff's disciplinary hearing audio.  *See* Doc. [112-12] at 3-6.  In the petition, Plaintiff checked boxes indicating that Calvin had stalked her, "caused or attempted to cause [her] physical harm," and "placed or attempted to place [her] in apprehension of immediate physical harm," among other acts.  *Id.* at 3.  The order of protection was granted the next day, prohibiting Calvin from communicating with Plaintiff in any manner or through any medium, setting a hearing on the matter for November 20, 2023.  Doc. [112-13]; *see also* Doc. [112] at 32 ¶ 103.  The same day, Calvin allegedly filed a fraudulent Missouri Bar Complaint against

Plaintiff.  *Id.* ¶ 104.  Also the same day, Plaintiff contacted the legal teams at YouTube and Google seeking to suspend Calvin's YouTube channel.  *Id.* ¶ 105.

Plaintiff also sought the Orlando Police Department's help in preventing Calvin from publishing the disciplinary hearing information.  Plaintiff filed a police report against Calvin and spoke on the phone with Orlando Police Officer Brett Brubaker on November 8, 2023, from 6:00 p.m. to 6:30 p.m., to provide an official statement and inform the officer about Plaintiff's order of protection against Calvin.  *Id.* at 33 ¶ 106.  Plaintiff reports that she also told Officer Brubaker that Calvin "had been threatening her life from October 25, 2023 until November 8, 2023, and Plaintiff needed the police officer to enforce the November 7, 2023 Ex Parte Order of Protection – Adult to stop her from doing the November 8, 2023 YouTube Live."  *Id.* ¶ 107.  Plaintiff allegedly asked Officer Brubaker to arrest Calvin multiple times.  At 7:00 p.m. on November 8, 2023, "Plaintiff made another request for the police officer to arrest said defendant and stop the You Tube Live by email correspondence."  *Id.* at 34 ¶ 110.  At 7:40 p.m., Plaintiff sent a third email to Officer Brubaker stating that Calvin "was violating the November 7, 2023 Ex Parte Order of Protection - Adult and needed to have her arrested ASAP."  *Id.* at 34 ¶ 111.  Later that evening, Plaintiff sought to report Officer Brubaker to his superiors.  Plaintiff spoke with Orlando Police Sergeant Sonya Saunders and reports that Sergeant Saunders accused her of filing a false protection order, threatened to attack Plaintiff's law license, and threatened to "take her down."  *Id.* at 35 ¶ 113.

Plaintiff reports that Calvin and Garner published her disciplinary hearing audio "on their respective You Tube Content Creation Channels on November 8, 2023, November 22, 2023 and April 17, 2025."  *Id.* at 59 ¶ 20.  In her Amended Complaint, Plaintiff writes that she "started experiencing 'heart attack' symptoms after the chain of events occurred on November 8, 2023 and went to the emergency room at Boone Hospital Center to be treated."  Doc. [112] at 99 ¶¶ 36-37.  She further reports that she had to stay overnight due to her health ailments and requires long-term treatment and surgery.  *Id.*

### 3. *Plaintiff alleges that defendants threatened her from November 2023 onward.*

Additionally, Plaintiff alleges that various defendants have threatened her and her family and sought to harm her in various ways.  Particularly, she states that Natavia Garner, Felicia

More, Vera Calvin, Anthony Lofties, and Marcella Boothe have made "the following threats to kill Plaintiff and [her] family:"

> (1) You Tube Lives and on paid subscription service (i.e. Patreon) stated that would 'beat her ass' and 'come to the Courthouse (i.e. U S. District Court of Eastern Missouri) and shoot her brains out.' . . .
>
> (3) On November 22, 2023, Defendant Natavia Tonia Garner (When Tay Talk) and Defendant Felicia Brim Moore (Drop Da Mic) called Plaintiff's cell phone demanding three (3) to five (5) times that she give the name and identity of her business associate who is a medical professional with intelligence connections.
>
> (4) On December 30, 2023, Defendant Natavia Tonia Garner (When Tay Talk) and Defendant Felicia Brim Moore (Drop Da Mic) called Plaintiff's father cell phone and made terroristic threats to Plaintiff and Plaintiff's family to make her withdraw the December 29, 2023 complaint.

*Id.* at 69 ¶ 14. In another part of the Amended Complaint, Plaintiff alleges that only Vera Calvin threatened to shoot her, but that she did so in the presence of other defendants. *Id.* at 43 ¶ 141 ("On May 18, 2024 at approximately 10:45 p.m. EST, Defendant Vera Lynn Calvin (Pretty Brown Eyez (PBE)) made a verbal threat to come down to the Court (i.e. U.S. District Court for the Eastern District of Missouri) at a hearing and shoot the Plaintiff's brains out during a telephone conference call" with Anthony Lofties, Marcella Boothe, and Terence Smith.). Further, Plaintiff alleges that the various defendants have incorrectly stated on their social media channels that Plaintiff was the attorney for YouTube Content Creator Black Titanic in a pending court case in Alabama filed December 22, 2023, which she regards as defamatory. *Id.* at 84 ¶ 18.

### 4. *Plaintiff alleges that she has suffered emotional distress, incurred medical bills, and lost wages because of defendants' actions.*

Plaintiff complains that she has been damaged by defendants in the form of emotional distress, medical treatment, lost wages, and legal fees. Specifically, Plaintiff states that she hired legal counsel and incurred additional legal fees to assist in her reinstatement to the Missouri Bar after Defendant Anthony Lofties filed a false Missouri Bar Complaint against her on June 25, 2024. *Id.* at 43 ¶ 142. Plaintiff "believes these despicable attacks by these defendants as described in the Background Information of the Amendment [sic] Complaint from July 2023 to present serve no purpose but to bring shame or humiliation to Plaintiff, an individual of ordinary sensibilities[.]" *id.* at 60 ¶ 24. The Amended Complaint further asserts that "[a]s a result of the defendants' actions, Plaintiff has suffered emotional distress, reputational harm, and economic loss." *Id.* at 61 ¶ 26. Additionally, Plaintiff alleges that defendants' conduct "has caused severe

emotional distress that has resulted in bodily harm requiring increase costs in therapy, hospital treatment including an iron infusion, emergency overnight stay, and surgery to treat stress related illness induced by the deliberate actions of the defendants from July 2023 to present." *Id.* at 99 ¶ 37.  For lost wages, Plaintiff alleges:

> 143.  Also, Plaintiff was unable to work as a seasonal tax preparation expert with Intuit, Inc. for the 2024 tax year season from December 13, 2024 to April 28, 2025 because of the false and fraudulent Missouri Bar Complaints filed by Defendant Vera Lynn Calvin (Pretty Brown Eyez (PBE)), Defendant Anthony Lofties and others that delayed reinstatement of Plaintiff's Missouri law license from probationary to "good status."  Plaintiff anticipated making roughly $20,000 to $25,000 in wages from Intuit, Inc. from December 13, 2024 to April 28, 2025.

> 144.  Generally, Plaintiff makes $100,000 to $150,000 annually from her Missouri legal practice and work as seasonal tax preparation expert at Intuit, Inc. Plaintiff believes the continued doxing, cyber-stalking, harassing and threatening of Plaintiff and her Missouri law practice by these defendants will have her lose this annual income.

*Id.* at 44 ¶¶ 143-44.  For relief, Plaintiff seeks judgment against all defendants; compensatory, punitive, and statutory damages in an amount she estimates to range from $50 million to $120 million; injunctive relief "prohibiting Defendants from further harassment, publication of private material, and contact with Plaintiff in any form"; and an award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988.  *Id.* at 115.

### C. Plaintiff has made a sufficient showing of personal jurisdiction over the individual defendants.

Four of the remaining individual defendants challenge the Court's personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2):  Anthony Lofties, Maurice Scott, Carlos King, and Joann Jenkins.[22]  See Docs. [143], [244], [286], [229].   When a defendant challenges personal jurisdiction, the plaintiff must make a prima facie showing that jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011)).  That showing is made "by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum].'"  *K-V Pharm.*, 648 F.3d at 591-92 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration in *K-V Pharm.*).  A plaintiff's prima facie showing is tested, "not by the pleadings alone, but by the affidavits and exhibits

---

[22] Marcella Boothe and Felicia Moore do not challenge personal jurisdiction.  *See* Docs. [202], [144].

supporting or opposing the motion." *Id.* (quotation marks omitted). While the party seeking to establish jurisdiction carries the burden, the Court views the evidence in the light most favorable to the nonmoving party and resolves factual conflicts in its favor. *Fastpath*, 760 F.3d at 820.

"Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011). General jurisdiction "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," while "[s]pecific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . ." *Id.* (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Plaintiff has alleged no facts suggesting that general jurisdiction can be exercised over Lofties, Scott, King, or Jenkins, who she concedes are residents of Tennessee, Alabama, Georgia and Washington, D.C., respectively. Doc. [112] at 4, 7. The Court thus assesses specific personal jurisdiction.

A federal court may exercise specific personal jurisdiction over a nonresident defendant in a diversity case if: (1) the facts presented satisfy the requirements of the state's long-arm statute; and (2) the exercise of personal jurisdiction does not violate due process. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Missouri long-arm statute, Mo. Rev. Stat. § 506.500, provides for the exercise of personal jurisdiction over a defendant that transacts business, makes a contract, or commits a tort within the state. Mo. Rev. Stat. § 506.500.1. "These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction, within the specific categories enumerated in the statute[], to the full extent permitted by the due process clause.'" *Viasystems, Inc.*, 646 F.3d at 593 (quoting *State ex rel. Metal Serv. Ctr. Of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984)). Constitutional due process requires that there be "minimum contacts" between the nonresident defendant and the forum state such that the maintenance of the suit does not "offend traditional notions of fair play and substantial justice." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Eighth Circuit uses a five-factor balancing test to determine whether sufficient minimum contacts exist for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the

26

convenience or inconvenience to the parties. *See, e.g.*, *Johnson*, 614 F.3d at 796 (citing *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965)). The first three factors are most significant. *Id.* The third factor distinguishes between specific and general jurisdiction. *Johnson*, 614 F.3d at 796 (citing *Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd.,* 89 F.3d 519, 523 n. 4 (8th Cir.1996). A court must consider the totality of the circumstances in determining whether it has personal jurisdiction. *Johnson*, 614 F.3d at 794, 796 (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995)).

Where an intentional tort is alleged, a plaintiff may show specific jurisdiction with the *Calder* effects test, *Johnson*, 614 F.3d at 796 (citing *Calder v. Jones,* 465 U.S. 783 (1984)), under which:

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Id.* at 796 (quoting *Lindgren v. GDT, LLC,* 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)) (internal quotation marks and citation omitted). The *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Id.* (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390-91 (8th Cir.1991) (internal quotation marks and citation omitted)). In *Calder*, the Supreme Court upheld the assertion of jurisdiction over an editor and reporter of a Florida-based newspaper by a California-based plaintiff bringing libel claims. 465 U.S. at 784-785. Because the defendants knew that their article "would have a potentially devastating impact" on the plaintiff in the state where the plaintiff lived, the Court found that the defendants must "reasonably anticipate being haled into court there." *Id.* at 789-90.

The Eighth Circuit recently distinguished claims involving reputational injury, as in *Calder*, from other torts not specifically targeted at the plaintiff's home state for personal jurisdiction purposes. *See Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022). In *Zazzle*, the Court contrasted selling a single allegedly trademark-infringing t-shirt to a Missouri customer through a broadly available commercial website with the libel alleged in *Calder*, where "the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by

27

a large number of California citizens."  42 F.4th at 954 (quoting *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014)).  Unlike a reputational injury specifically targeted at the forum state, the single t-shirt sale was an insufficient connection to the forum under the *Calder* effects test, because the plaintiff "had not pleaded facts suggesting that Zazzle 'uniquely or expressly' aimed its allegedly tortious act . . . at Missouri."  *Id.* (quoting *Johnson*, 614 F.3d at 798; citing *Walden*, 571 U.S. at 287-88).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.* (quoting *Walden*, 571 U.S. at 290).

In *Select Comfort Corp. v. Kittaneh*, a court found personal jurisdiction where defendants operated an interactive, allegedly trademark-infringing website, causing monetary and reputational damage to the plaintiff in its home state, for which the forum state had an interest in providing a forum.  161 F. Supp. 3d 724, 730 (D. Minn. 2014).  Even though the plaintiff "repeatedly lump[ed] all Defendants together without delineating which contacts are attributable to which Defendants," the court found the allegations sufficient to establish the "minimal" prima facie case of personal jurisdiction required by the Eighth Circuit.  *Id.* at 730-31 (quoting *K-V Pharm. Co.*, 648 F.3d at 592)); *see also Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009) ("The evidentiary showing required at the prima facie stage is 'minimal.") (citing *Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1007 (8th Cir.2005)).

Applying the above authorities, Plaintiff has made the "minimal" prima facie showing of personal jurisdiction over the remaining individual defendants.  Plaintiff alleges that the defendants have specifically targeted her online, broadcasting to "millions of people" allegedly false and harmful statements including that she is, among other things, a "fake lawyer, fake bankruptcy attorney, [and] mentally unstable," harming her in Missouri.  *See* Doc. [112] at 91-92 ¶ 15, at 60 ¶ 23, at 104 ¶ 22.  She further alleges that Mr. Lofties "contacted people from St Louis, MO to dox [her]," *id.* at 96 ¶ 19, that   Ms. Moore and others conducted a YouTube Live stream on July 25, 2023, "where they allowed panelists to publish Plaintiff's full government name in their chat.," *id.* at 24 ¶ 72, and that on July 28, July 31, and August 2, 2023, Ms. Jenkins conducted a YouTube Live stream "to publish a Columbia, MO article pertaining to the Plaintiff, Plaintiff's Linked-In profile, Plaintiff's picture, and other information," *id.* ¶ 73.  Regarding Mr. Scott, Plaintiff alleges that he "plotted with other LAMH cast members," to "attack YouTube content creators and subscribers, like the Plaintiff" for the opinions they shared online in support

28

of Melody Rodgers.  *Id.* at 18 ¶ 50.  Viewing the evidence in the light most favorable to the nonmoving party and resolving factual conflicts in her favor, *Fastpath*, 760 F.3d at 820, the Court finds that Plaintiff has made the minimal showing for establishing personal jurisdiction over Defendants Lofties, Scott, King, and Jenkins.

### D.  Plaintiff fails to state a claim for any tort against any defendant.

#### 1.  *Count 4 fails to state a claim for public disclosure of private facts.*

If plaintiff is claiming invasion of privacy based on public disclosure of private facts, that claim requires that the plaintiff show "(1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities."  *Balke v. Ream*, 33 S.W.3d 589, 610 (Mo. Ct. App. 2000).

Here, Plaintiff fails to explain how the information allegedly disclosed by the Content Creator Defendants—i.e., her "governmental name, picture, and" unspecified "HIPPA [*sic*] protected information," Doc. [120] at 57-58 ¶ 10, constitutes "private matters in which the public has no legitimate concern," nor how the disclosures were "so as to bring shame or humiliation to a person of ordinary sensibilities."  *Balke*, 33 S.W.3d at 594; *see also Crader v. Wal-Mart Stores, Inc.*, 2010 WL 4930978, at *2 (E.D. Mo. Nov. 30, 2010) (mere disclosure of plaintiff's name and address insufficient to show that disclosure "would result in shame or humiliation"); *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 855 (Mo. Ct. App. 2015) (dismissing public disclosure of private facts claim for failure to specify why a disclosure was "embarrassing").  Although the category "HIPAA-protected information" does raise the specter that something disclosed might have been private and/or embarrassing, Plaintiff's allegations regarding release of HIPAA-protected information lack the requisite specificity to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff does not specify what information was disclosed, when it was disclosed, by whom, or how it embarrasses her.  Plaintiff does provide several dates on which Natavia Garner "reveal[s] HIPPA information from a Missouri Supreme Court Disciplinary Audio Hearing," Doc. [112] at 45 ¶ 147, but Plaintiff's disciplinary hearing is a matter of public record, and Garner has been dismissed from this action.  *See* Mo. Sup. Ct. R. 5.31 (detailing the public nature of attorney disciplinary actions).  "Because [Plaintiff has] not nudged [her] claims across the line from conceivable to plausible," Count 4 is dismissed. *Twombly*, 550 U.S. at 547.

### 2.   *Count 5 fails because false light is duplicative of defamation.*

Plaintiff brings her false light claim alleging that the Content Creator Defendants made statements "mischaracteriz[ing]" her as "being a fake lawyer, a fake bankruptcy attorney, a mentally unstable person, and an attorney who is disbarred."  Doc. [112] at 65–66 ¶ 22.  The Missouri Supreme Court "has refused to recognize false light invasion of privacy claims when the claim 'is nothing more than the classic defamation action where one party alleges that the other published a false accusation concerning a statement of fact.'"  *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 803 (Mo. banc 2017) (quoting *Sullivan v. Pulitzer Broad. Co.*, 709 S.W.2d 475, 480–81 (Mo. banc 1986)); *see also Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 600 (Mo. banc. 2013).  Recovery for damages to reputation is not allowed under the tort of false light invasion of privacy, as Plaintiff seeks to plead.  *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1057 (8th Cir. 2012) (citing *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 317 (Mo. banc 1993) ("Recovery for untrue statements that cause injury to reputation should be in defamation.").  Further, "[a] claim for false light . . . is properly dismissed if recovery should be in defamation." *Smith*, 519 S.W.3d at 803 (citations omitted).

Plaintiff seeks to recover in defamation on the same grounds as her false light claim.  *See, e.g.*, Doc. [112] at 84 ¶¶ 17-19 (identifying the allegedly defamatory statements by defendants as "describ[ing] the Plaintiff as a 'fake attorney,' 'fake bankruptcy attorney,' 'attorney who has been disbarred,' 'fake seasonal tax expert or CPA'").  Because Plaintiff's recovery should be in defamation, if at all, Plaintiff's false light claim is dismissed.

### 3.   *Counts 9, 10, and 11 fail to state a defamation claim.*

"Modern law combines libel and slander as the generic tort of defamation."  *Boyd v. Schwan's Sales Enters., Inc.*, 23 S.W.3d 261, 264 n.3 (Mo. Ct. App. 2000).  To state a claim for defamation under Missouri law, a plaintiff must allege: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Stockley v. Joyce*, 963 F.3d 809, 819 (8th Cir. 2020) (quoting *Smith*, 519 S.W.3d at 798).  In determining whether a statement is defamatory, "the alleged defamatory words must be considered in context, giving them their plain and ordinarily understood meaning." *Id.* (quoting *Nazeri*, 860 S.W.2d at 311 (internal quotation marks omitted)).  Defamatory statements are those that "tend to disgrace and degrade the person or expose him to public hatred, contempt, or ridicule or cause him to be shunned or

30

avoided." *Mandel v. O'Connor*, 99 S.W.3d 33, 36 (Mo. Ct. App. 2003). To allow the "breathing space" necessary for free expression and debate under the First Amendment, certain statements, such as statements of "opinion" not provable as false, cannot be the basis of a defamation claim. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 283, (1964). "Whether an alleged statement is capable of being treated as an opinion or as an assertion of fact is a question of law". *Smith*, 519 S.W.3d at 798 (citing *Nazeri*, 860 S.W.2d at 314). "The need to balance the protection of an individual's reputation with freedom of expression has shaped the boundaries of state defamation law." *Id.* (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 772 (1986)). The constitutional right to free speech and free press requires maintaining "uninhibited, robust, and wide-open" debate on public issues. *Id.* (quoting *Philadelphia Newspapers*, 475 U.S. at 772). The legal standard for defamation sets a high bar to allow the "breathing space" necessary for free expression and debate under the First Amendment. *Smith*, 519 S.2.3d at 798 (quoting *Gertz*, 418 U.S. at 347).

> a.   Public figures must show actual malice to state a claim for defamation.

The requisite degree of fault to maintain a defamation action depends on whether the allegedly defamed individual is a public figure. Public figures must show a higher level of fault to recover for defamation because first, public figures "usually enjoy significantly greater access to the channels of effective communication" and are thus better able to counter false statements and protect themselves from the harm caused by defamatory speech; *id.* at 344; and second, public figures "have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them," *id.* at 345. In Missouri, whether an individual is a public or private figure is a question of law. *See Cockram,* 680 F.3d at 1053. Private individuals must show only negligence in the making of a defamatory statement to recover, while public figures must show actual malice. *Gertz*, 418 U.S. at 345.

Being a public figure is not all-or-nothing; a person can be a public figure for some purposes but not others. *Id.* The Eighth Circuit has defined a "limited purpose public figure" as "one who 'voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011) (quoting *Gertz*, 418 U.S. at 351). An examination of "the 'nature and extent of an individual's participation in the particular controversy giving rise to the defamation' . . . [allows for a determination of] whether the individual has voluntarily and purposefully

injected himself into that controversy in an attempt to influence the resolution of the controversy."  *Cockram*, 680 F.3d at 1053 (quoting *Lundell Mfg. Co. v. Am. Broad. Cos.*, 98 F.3d 351, 362 (8th Cir. 1996) (quoting *Gertz*, 418 U.S. at 352)).  In *Nelsen*, the Eighth Circuit deemed the plaintiff a public figure for a "limited range of issues including whether his Boxing Club would be whites only" after he gave hundreds of press interviews in publications and online platforms regarding his views on race; his website generated "intense public discussion in online community bulletin boards"; and the attention on him turned critical when people dug up his history.  *Nelsen*, 513 F. Supp. 3d at 1108-09.

"Speech deals with matters of public concern when "it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citing *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)) (internal citation omitted); *see also Bowman v. Pulaski Cty. Special Sch. Dist.*, 723 F.2d 640, 644 (8th Cir. 1983) (observing that "media coverage" is a good gauge of public interest).  Put differently, a public concern or controversy is one whose ramifications will affect "persons who are not direct participants" in the controversy.  *Stepnes*, 663 F.3d at 963 (quotation omitted); *see also Fredin v. Middlecamp*, 500 F. Supp. 3d 752, 777 (D. Minn. 2020), *aff'd*, 855 F. App'x 314 (8th Cir. 2021) (unpublished per curiam).

To demonstrate actual malice, a public figure plaintiff must show that a defendant spoke with knowledge of their statement's falsity or with reckless disregard for its truth.  Thus, in order to prevail on a defamation claim, a public figure plaintiff must eventually "prove by clear and convincing evidence that the defendant . . . made false remarks with a high degree of awareness of probable falsity, or that the defendant entertained serious doubts as to the truth of his publication."  *Nelsen*, 513 F. Supp. 3d at 1112 (citing *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001)); *see also Garrison v. Louisiana*, 379 U.S. 64, 78-79 (1964); *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).  "Evidence of a defendant's ill will, desire to injure, or political or profit motive does not suffice."  *Id.*  For example, Nelsen's claims that the defendant acted to damage his reputation and to target white males specifically did not establish that the defendant acted with actual malice.  *Id.*

In contrast, a cashier in *Cockram* did not inject herself into the controversy and was not a public figure where she merely "entered a generic phone number into the register that resulted in

32

a racial slur appearing on a return receipt and found herself in the middle of a public controversy." *Cockram*, 680 F.3d at 1053.  In making this determination, the Eighth Circuit focused on the fact that Cockram spoke publicly about the conflict *only after the controversy arose*. *Id.*  After Cockram was blamed for the racial slur, she issued a statement and "responded to media inquiries in an attempt to salvage her reputation." *Id.* (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 134–35 (1979) (defendant's argument that the plaintiff was a limited purpose public figure based on the plaintiff's access to the media was unavailing where, *inter alia*, the plaintiff's access to the media appeared only after the alleged libel)).

b.  Plaintiff is a limited purpose public figure.

For more than six years, Plaintiff has inserted herself into public controversies regarding LAMH.  She alleges that from January 8, 2019, to the present, she "visited YouTube Content Creators' channels and participated in public chats and panel discussions to discuss Love and Marriage: Huntsville."  Doc. [112] at 13 ¶ 26; *id.* at 116 ¶ 16.  Plaintiff noticed what she considered "domestic violence" perpetrated against LAMH cast member Melody Rodgers by Rodgers' ex-husband and spoke out "on panels to give public analysis and tools" to influence the "escape" from Plaintiff's perceived dangers.  *Id.* at 14-15 ¶¶ 30-33.  Plaintiff influenced organized action "on a YouTube live panel discussion . . . where she explained to the public how to exercise their First Amendment rights (i.e. free speech, freedom of assembly, free press and the right to petition the government/corporation for grievances) under the U.S. Constitution" . . . . "[t]his YouTube live ignited the creation of Change.org petitions." *Id.* at 16 ¶ 42.  Plaintiff further participated in YouTube live broadcasts to provide "analysis of potential legal actions", *id.* at 22 ¶ 64, and to expose "the significant criminal background of Defendant Maurice J. Scott" to provide insight to the public regarding his eligibility to practice law.  *Id.* at 23-24 ¶¶ 68-69.  Plaintiff's allegations, which the Court takes as true, demonstrate her deliberate efforts to involve herself in and influence nationwide social media discussions concerning the show Love and Marriage: Huntsville.

In this case, the particular public controversy giving rise to the allegedly defamatory speech is the alleged domestic abuse depicted on the show LAMH.  *See Lundell Mfg. Co.*, 98 F.3d at 363; Doc. [112] at 14-15 ¶¶ 30-33.  The fact that an active Content Creator network published numerous videos to a wide and engaged YouTube audience supports the finding that the controversy involving Melody Rodgers' alleged domestic violence is a matter of public

concern.  Public engagement with the content demonstrates that it is "a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011); *see also* Doc. [112] at 91-92 ¶ 15 (alleging that statements made on Content Creator Defendants' YouTube live streams and other social media accounts "have reached millions of people."). Further, the ramifications of the LAMH domestic violence controversy extend beyond Plaintiff and the Content Creator Defendants to not only the LAMH cast members and producers, but also potentially to other individuals experiencing domestic violence.  *See, e.g.*, Doc. [112] at 49 ¶ 18 ("Plaintiff was retaliated against for helping give information on public social media panels that would help a woman escape from an abusive ex-husband and a hostile work environment.").  In other words, the LAMH abuse controversy is a matter of public concern because its consequences affect "persons who are not direct participants" in the controversy.  *Stepnes*, 663 F.3d at 963 (quotation omitted).

Like the plaintiff in *Nelsen*, Plaintiff spoke publicly on numerous YouTube live streams prior to the allegedly defamatory statements, Doc. [112] at 22 ¶ 64; 23 ¶ 69; 28 ¶ 89, which suggests that she is at least a limited purpose public figure.  *Nelsen*, 513 F. Supp. 3d at 1108-09; *see also Bowman*, 723 F.2d at 644.  Unlike the plaintiff in *Cockram*, Plaintiff did not speak publicly only to salvage her reputation; she spoke out publicly on a matter of public concern prior to any alleged attacks on that reputation.  680 F.3d at 1053; *Hutchinson*, 443 U.S. at 134–35.  Through her appearances on YouTube livestreams over a period of six years, Plaintiff "invite[d] attention and comment." *Gertz*, 418 U.S. at 345.  As a public figure, Plaintiff "enjoy[ed] greater access to the channels of effective communication," which she used to appear on YouTube lives in December 2023 "to try and mitigate and diffuse the issue." *Id.* at 344; Doc. [112] at 38 ¶ 124.

In Missouri, whether an individual is a public or private figure is a question of law. *Cockram*, 680 F.3d at 1053.  Based on Plaintiff's own allegations, she has thrust herself into the spotlight and established herself as a limited public figure for purposes of LAMH commentary, particularly regarding domestic violence and legal issues facing Melody Rodgers.  Thus, to recover in defamation, she must establish that her alleged defamers spoke with actual malice.

            c.   <u>Plaintiff's allegations are insufficiently specific to state a defamation claim.</u>

In support of her defamation claim, Plaintiff alleges that from July 2023 to the present, "individual defendants" would "do social media lives, written Community Posts, and make oral

34

remarks stating the Plaintiff was a 'fake lawyer,' 'fake attorney,' 'fake bankruptcy attorney,' an 'attorney facing disbarment or disbarred,'" as well as a "fake seasonal tax expert or CPA." Doc. [112] at 113 ¶ 27; *id.* at 84 ¶¶ 17, 19. Plaintiff alleges that the statements are false because, at the time, Plaintiff was a barred attorney. *Id.* at 84-85 ¶¶ 20-21. Further, Plaintiff asserts that "said defendants made these false and fraudulent statements with reckless disregard for whether it is true or not because they wanted to punish Plaintiff." *Id.* at 85 ¶ 22.

Assuming without deciding that statements calling Plaintiff a "fake attorney" and the like are actionable, false, defamatory statements—i.e., rather than "lusty and imaginative expression[s] of [] contempt," *Smith*, 519 S.W.3d at 801 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990))—Plaintiff does not plead her claim with the requisite specificity. *See, e.g., King v. Union Station Holdings*, LLC, 2012 WL 5351598, at *4 (E.D. Mo. Oct. 30, 2012) (dismissing defamation claim for failure to "identify the manner in which 'the [defamatory] accusation' was 'reported'"). She does not allege details about which defendant made which statement, when each statement was made, or how each statement was made. *See, e.g.,* Doc. [112] at 84 ¶ 17 ("From July 2023 to present, the above defendants have described the Plaintiff as a 'fake attorney'. . . ."); *id.* at 104 ¶ 22 ("Since July 2023, these defendants would do social media lives, written Community Posts, and make oral remarks stating the Plaintiff was a 'fake attorney'. . . ."); *id.* at 84 ¶ 18 ("various defendants have incorrectly stated on their social media platforms . . . ."

To the extent Plaintiff does plead specific information regarding the circumstances of statements, either they involve dismissed defendants or they are not false. For example, Plaintiff pleads specific information about allegedly defamatory statements made by Vera Calvin and Natavia Garner, but both have been dismissed. Plaintiff also pleads specific information about the publishing of the audio recording of her disciplinary hearing, but an accurate audio recording is not a false statement, and so cannot be the basis for a defamation claim. The same is true of any "doxxing," to the extent it consists in publicizing information that is true. Further, any threats or encouragement to file bar complaints, while inflammatory, would not qualify as false statements of fact as required to state a claim for defamation. *See, e.g.*, *Nazeri*, 860 S.W.2d at 314 (distinguishing opinion and fact is a question of law, and Missouri courts ask whether "a reasonable factfinder could conclude that the statement implies an assertion of objective fact").

Because Plaintiff's allegations do not enable "the court to draw the reasonable inference that [any] defendant is liable for the misconduct alleged," they fail to state a claim.  *Whitney*, 700 F.3d at 1128.

### d.  Plaintiff fails to plead actual malice.

To demonstrate actual malice, a public figure plaintiff must show that a defendant "made false remarks with a high degree of awareness of probable falsity, or that the defendant entertained serious doubts as to the truth of his publication."  *Nelsen*, 513 F. Supp. 3d at 1112. Plaintiff "believes these despicable attacks by these defendants as described in the Background Information of the Amendment Complaint from July 2023 to present serve no purpose but to bring shame or humiliation to Plaintiff."  Doc. [112] at 60 ¶ 24.   But "[e]vidence of a defendant's ill will, desire to injure, or political or profit motive does not suffice" to establish actual malice.  513 F. Supp. 3d at 1112.  Even if certain defendants acted specifically to humiliate Plaintiff, as she alleges, that is insufficient to state a defamation claim.

Plaintiff alleges:

> [S]aid defendants exhibited actual malice because they knew the statements of me being a 'fake lawyer,' 'fake bankruptcy attorney,' 'disbarred attorney,' etc . . . was false when they looked me up to see that the Plaintiff was a practicing attorney in the State of Missouri.  Also, Plaintiff believe[s] that said defendants made these false and fraudulent statements with reckless disregard for whether it is true or not because they wanted to punish [her].

Doc. [112] at 66 ¶¶ 24-25.  Plaintiff's conclusory assertion that defendants "exhibited actual malice" and made the statements "with reckless disregard for whether it is true or not" are insufficient to survive a Rule 12(b)(6) motion.  *Id.* ¶¶ 24.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff does not specify when the statements were made, which defendants made them, or when or how those same defendants allegedly saw she was a "practicing attorney."  Because Plaintiff's law license has been suspended, reinstated, and suspended again since 2020, the plausibility of Plaintiff's allegation that they knew any such statements were false—or spoke "with a high degree of awareness of probable falsity," or "entertained serious doubts as to . . . truth," *Nelsen*, 513 F. Supp. 3d at 1112—depends critically on the timing and other circumstances of defendants' alleged statements—none of which Plaintiff provides.  Lacking any such specifics, the Amended Complaint fails to plausibly allege

36

actual malice, as required for a defamation claim.  *See Iqbal*, 556 U.S. at 679 (well-pleaded facts must establish more than a "mere possibility of misconduct").

Because her allegations lack specificity and she fails to plead actual malice, Plaintiff's defamation claim is dismissed for failure to state a claim.

### 4. *Count 12 fails to allege sufficiently outrageous behavior to state a claim for intentional infliction of emotional distress.*

To state an intentional infliction of emotional distress (IIED) claim, a plaintiff must "plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm."  *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (cleaned up).  "Additionally, the plaintiff must demonstrate that the sole intent in acting was to cause emotional distress."  *Geran v. Xerox Educ. Servs., Inc.*, 469 S.W.3d 459, 468 (Mo. Ct. App. 2015).  Although there is not a precise definition of what constitutes "extreme and outrageous" conduct, the Missouri Supreme Court has held that the conduct "must have been 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997) (quoting *Warrem v. Parrish*, 436 S.W.2d 670, 673 (Mo. 1969)).  The conduct must be "more than malicious and intentional" and a claim does not lie for mere "insults, indignities, threats, annoyances, or petty oppressions."  *Polk v. INROADS/St. Louis, Inc.,* 951 S.W.2d 646, 648 (Mo. Ct. App. 1997) (citing *Viehweg v. Vic Tanny Int'l. of Mo., Inc.*, 732 S.W.2d 212, 213 (Mo. Ct. App. 1987)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Id.* (citing Restatement (Second) of Torts section 46 cmt. h (1965)).  "The court must determine whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim 'outrageous!'" *Polk*, 951 S.W.2d at 648 (quoting *Viehweg*, 732 S.W.2d at 213).

"Missouri case law reveals very few factual scenarios sufficient to support a claim for [intentional infliction of emotional distress]."  *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 310 (8th Cir. 2009) (citation omitted); *see also Kansas City Laser, Inc. v. MCI Telecomm. Corp.*, 252 F. App'x 100, 103-04 (8th Cir. 2007) ("Rarely is a defendant's conduct sufficiently extreme and outrageous to warrant recovery [for IIED].") (cleaned up).  For example, three intimidating phone calls falls "well short of a level of extremity that could be said to exceed all possible

bounds of decency and be regarded as atrocious and utterly intolerable." *Pujols v. Pujols Fam. Found.*, 2017 WL 4310436, at *8 (E.D. Mo. Sept. 28, 2017), *aff'd,* 721 F. App'x 567 (8th Cir. 2018) (quoting *Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 987 (E.D. Mo. 2015), *aff'd*, 832 F.3d 865 (8th Cir. 2016).  Further, a plaintiff must plead facts to plausibly allege that the defendant acted with the sole purpose of causing her emotional distress.  *See, e.g., Bowles v. Apro Int'l Inc.*, 2019 WL 3082571, at *6 (E.D. Mo. July 15, 2019) (dismissing IIED claim because plaintiff "fail[ed] to allege any facts which could be construed as fulfilling the intent requirement").

In her IIED claim, Plaintiff focuses on alleged threats, doxxing, and the publishing of her disciplinary hearing audio by now-dismissed Defendants Garner and Calvin.  The specific allegations that involve particular remaining defendants are as follows:

> (3) On November 22, 2023, Defendant Natavia Tonia Garner (When Tay Talk) and Defendant Felicia Brim Moore (Drop Da Mic) called Plaintiff's cell phone demanding three (3) to five (5) times that she give the name and identity of her business associate who is a medical professional with intelligence connections.
>
> (4) On December 30, 2023, Defendant Natavia Tonia Garner (When Tay Talk) and Defendant Felicia Brim Moore (Drop Da Mic) called Plaintiff's father cell phone and made terroristic threats to Plaintiff and Plaintiff's family to make her withdraw the December 29, 2023 complaint.

Doc. [112] at 70 ¶ 14.  Though Plaintiff provides specific dates that Defendants Felicia Moore, Joann Jenkins, Donovan Frison, Terence Smith, and Melissa Scott-Chase held YouTube livestreams, she alleges only that they did so "as a coordinated effort to dox, harass, stalk and threaten the Plaintiff," rather than providing specific information about what they said or did. Doc. [112] at 38 ¶ 124.  Similarly, Plaintiff's allegations regarding "these individual defendants" accusing her of being a "fake lawyer" lack specificity.  *Id.* at 113 ¶ 27.  Plaintiff also complains about Defendant Maurice Scott suing her in a separate action in Alabama state court.  *Id.* at 39 ¶ 126.  And Plaintiff makes specific allegations regarding the actions of now-dismissed Vera Calvin and Natavia Garner, which are immaterial to whether Plaintiff has stated a claim for IIED against the remaining defendants.  *Id.* at 39-40 ¶¶ 128-129.

A claim for IIED does not lie for mere "insults, indignities, *threats*, annoyances, or petty oppressions." *Polk*, 951 S.W.2d at 648 (emphasis added).  Plaintiff's strongest and most specific allegations regarding a remaining defendant consist of her statements that individuals including Felicia Moore "have done the following threats to kill Plaintiff and Plaintiff's family,"

explaining that Moore specifically (1) called her three to five times on November 22, 2023, to ask the identity of her business associate, and (2) called her father's cell phone on December 30, 2023, and "made terroristic threats" to seek the withdrawal of the Amended Complaint, Doc. [112] at 69-70 ¶ 14.  These statements comprise mere threats and annoyances that fail to meet the standard for IIED under *Polk*.  951 S.W.2d at 648.  Further, as in *Pujols*, a defendant making three intimidating phone calls falls "well short of a level of extremity that could be said to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable." 2017 WL 4310436, at *8.  The Court does not find the conduct alleged in the Amended Complaint as to the remaining defendants is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Gibson*, 952 S.W.2d at 249 (quoting *Warrem*, 436 S.W.2d at 673).

Plaintiff's IIED claim is dismissed for failure to state a claim.

### 3. Count 13 pleads none of the elements of negligent infliction of emotional distress.

In Missouri, negligent infliction of emotional distress (NIED) claims may be brought either as a direct victim or bystander.  *See Jarrett v. Jones*, 258 S.W.3d 442, 449 (Mo. banc 2008).  A direct NIED claim requires the plaintiff to establish that:  "[1] the defendant had a duty to protect the plaintiff from injury, [2] the defendant failed to perform that duty, and [3] the plaintiff's injury was proximately caused by the defendant's failure."  *Id.* at 448 (citing *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990)).  The bystander NIED claim are: (1) the defendant engaged in conduct that "involved an unreasonable risk to the plaintiff"; (2) "plaintiff was present at the scene of an injury producing, sudden event"; and (3) "plaintiff was in the zone of danger, i.e., placed in reasonable fear of physical injury to her or his own person."  *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 465 (Mo. 2001) (cleaned up).

Plaintiff fails to plead the elements of NIED as to any defendant.  *See, e.g., Kansas City Laser, Inc. v. MCI Telecommunications Corp.*, 252 F. App'x 100, 103 (8th Cir. 2007) (affirming dismissal of Missouri bystander NIED claim that "failed to identify . . . an 'injury-producing sudden event' warranting relief"); *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001) (affirming dismissal of Missouri direct NIED claim that "makes no allegation

39

that the defendants owed [plaintiff] any legally recognized duty.").  Her NIED claim is therefore dismissed.

III.    **Due to Plaintiff's pervasive and unrelenting pleading deficiencies, no amendment will be allowed, and her claims are dismissed with prejudice.**

In two of her 14 responses to motions to dismiss, Plaintiff includes a sentence seeking leave to amend.  *See* Doc. [245] (requesting leave to amend to substitute the City of Orlando for the Orlando Police Department); Doc. [288] (requesting that her FTCA Act claims "be construed as arising under the Missouri Merchandising Practices Act (RSMo § 407.020), or in the alternative, [be permitted] leave to amend accordingly."  Those requests fall far short of the mark, both procedurally and substantively.  *See* E.D.Mo. L.R. 4.07; *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (leave to amend is inappropriate "where the plaintiff has not indicated how it would make the complaint viable").  Plaintiff will not be granted leave to amend.

Moreover, the Court will also dismiss all of Plaintiff's claims with prejudice.  Though some of the claims have failed under Federal Rule of Civil Procedure 8, and ordinarily, dismissals under Rule 8 are without prejudice, "if the plaintiff has persisted in violating Rule 8 the district court is justified in dismissing the complaint with prejudice."  *Micklus v. Greer,* 705 F.2d 314, 317 n.3 (8th Cir. 1983).  In *Michaelis v. Nebraska State Bar Association*, for example, the Eighth Circuit affirmed dismissal with prejudice of an amended complaint spanning 98 pages and 144 numbered paragraphs, explaining that the plaintiff had adequate opportunity to fix his pleading deficiencies, but his "deliberate persistence in refusing to conform his pleadings to the requirements of Rule 8 justified dismissal of the complaints with prejudice."  717 F.2d 437, 439 (8th Cir. 1983).  Similarly, the Ninth Circuit upheld dismissal with prejudice of an amended complaint that "was 23 pages long with 24 pages of addenda, named additional defendants without leave of court, and was equally as verbose, confusing and conclusory as the initial complaint."  *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) ("Though there are a wide variety of sanctions short of dismissal available, the district court need not exhaust them all before finally dismissing a case.").  Courts in the Eighth Circuit may also dismiss actions with prejudice when presented with a plaintiff's "inability to allege facts sufficient to state a claim against [a defendant] even after being granted leave to amend."  *Ellis v. Nike USA,*

*Inc.*, 158 F.4th 932, 936-37 (8th Cir. 2025) (quoting *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 653 (8th Cir. 1998)).

In the present case, Plaintiff's original complaint was nine pages long, named 11 defendants, and brought only three apparent claims:  (1) violation of free speech, (2) violation of Federal Trade Commission Act, 15 U.S.C. § 45, (3) violation of five rights of Consumer Protection Act of 1986, U.S.C. § 41-58.  Doc. [1] at 2-5.  The Amended Complaint, by contrast, is 116 pages long and names 21 defendants, bringing every one of its 14 claims against all 21 of them.  The Amended Complaint reaches far beyond the mere 23 pages presented in *Nevijel* or 98 pages presented in *Michaelis*, and it is far more "verbose, confusing and conclusory [than] the initial complaint."  *Nevijel*, 651 F.2d at 674.

Further, having been put on notice by the motions to dismiss filed by Maurice Scott, OWN, and WBD that the Amended Complaint may have Rule 8 problems, *see, e.g.,* Docs. [244] at 9; [280] at 6, throughout her 14 responses, Plaintiff has, by and large, "chose[n] to stand on [her FAC], confident [her] allegations were sufficient."  *Ellis*, 158 F.4th at 936-37.  Dismissal of Plaintiff's claims with prejudice is proper under such circumstances.  *See id.* (affirming dismissal with prejudice where plaintiff had seven months to properly seek leave to amend and instead included only "a single line" in an opposition brief) (quoting *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012)).

## IV.     <u>Plaintiff appears to have violated Federal Rule of Civil Procedure 11.</u>

"Every filing in a federal court that contains citations to phony case law amounts to a violation of Rule 11(b) of the Federal Rules of Civil Procedure.  There is no *pro se* exception to Rule 11(b)."  *Turnage v. Associated Bank, N.A.*, 2025 WL 3052638, at *3 (D. Minn. Sept. 12, 2025), *aff'd summarily*, 25-3092 (8th Cir. Nov. 25, 2025); *see also Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 970 (7th Cir. 2026) ("all litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal.").

In several of her responses to motions to dismiss, Plaintiff cites nonexistent cases or cites exaggerated or inaccurate holdings for existing cases.  For example, Plaintiff cites four times to an opinion from a case she calls "Weniger v. Dynamic Recovery Solutions, LLC," which she claims is from the Eastern District of Missouri, case number "4:21-CV-00261-SRC," and Westlaw citation "2021 WL 4260623."  *See* Docs. [269] at 5; [288] at 5; [289] at 6; [291] at 6.

No such case exists.[23]  Plaintiff also cites *Steen v. Murray*, 919 F. Supp. 2d 993, 997 (S. D. Iowa 2013), to support the claim "[t]hese acts foreseeably injured Plaintiff in Missouri, satisfying the venue statute," Doc. [288] at 9, when *Steen* specifically rejected the argument that the location of plaintiff's damages was the proper venue.  *Steen*, 919 F.Supp. at 999 n.8 ("Plaintiffs also argue that venue in this District is proper because their injury occurred in Iowa. . . . Under established Eighth Circuit law, however, such argument is unavailing.").  Those are not the only examples.[24]

By signing her filings and presenting them to the Court, Plaintiff "certifie[d] that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that she was not presenting it "for any improper purpose" and that the "legal contentions" she made in her filings were "warranted by existing law."  FED. R. CIV. P. 11(b).  "Every filing in a federal court that contains citations to phony case law amounts to a violation of Rule 11(b) of the Federal Rules of Civil Procedure."  *Turnage*, 2025 WL 3052638, at *3; *see also Mills v. City of St. Louis*, 2025 WL 3470293, at *1 (E.D. Mo. Dec. 3, 2025) ("Providing the Court with fake cases and forged quotations cannot be squared with Rule 11(b).").

Plaintiff is ordered to show cause by April 17, 2026, why she should not be sanctioned under Rule 11(b) for citing non-existent cases and mischaracterizing existing ones.  Though the Court will not decide whether or how to sanction Plaintiff until it reviews her response to this Order, it notes that it has "broad discretion in the choice of sanctions."  *Vallejo v. Amgen, Inc.*,

---

[23] The provided Westlaw citation refers to an opinion from the Western District of Michigan granting a defendant's motion for summary judgment in a case involving § 1983 civil rights claims regarding prison medical treatment.  *Harrison v. Clark*, No. 1:20-CV-271, 2021 WL 4260623, at *1 (W.D. Mich. Sept. 20, 2021), *aff'd*, No. 21-1667, 2022 WL 19572643 (6th Cir. Nov. 4, 2022).  In the Eastern District of Missouri, the case number 4:21-CV-00261 belongs to *Hodge v. Meredith Corp. of Iowa*, an employer discrimination case quickly remanded to state court after the court found it lacked subject matter jurisdiction.  Finally, in searching by the case name, the Court found *Wenig v. Messerli & Kramer P.A.*, 2013 WL 1176062, at *1 (D. Minn. Mar. 21, 2013) (among other things, denying class certification regarding Capital One's debt collection practices) and *Hammons v. Dynamic Recovery Sols. LLC*, 2017 WL 11695761, at *1 (E.D. Ark. Mar. 8, 2017) (granting default judgment in case regarding debt collection practices).  None of the above cases remotely support the parenthetical Plaintiff attached to the fake case:  "(citing Calder and finding specific jurisdiction over employer based on conduct of employee directed at Missouri)."  *See* Doc. [269] at 5.

[24] Plaintiff also cites *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020), for the proposition that "complex *pro se* pleadings should not be dismissed merely for length where facts are discernible," Doc. [288] at 9, which it does not hold or imply.  Given Plaintiff's voluminous filings, the Court doubts that it discovered every made-up case or mischaracterization of case law.

903 F.3d 733, 747 (8th Cir. 2018).  Recent sanctions for presenting phony caselaw to courts include monetary sanctions,[25] filing restrictions,[26] and dismissal with prejudice.[27]

**V.   Counterclaim Plaintiffs Natavia Garner and Marcella Boothe have not sufficiently alleged the requisite amount in controversy for diversity jurisdiction.**

The diversity jurisdiction statute, 28 U.S.C. § 1332(a), provides that federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"  A complaint that alleges the jurisdictional amount in good faith suffices to confer jurisdiction.  *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (citing *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002).  The "proponent of federal jurisdiction must show 'that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed jurisdictional amount.'"  *Id.* (citing 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3702 (3d ed.1998)).

Subject matter jurisdiction can never be forfeited or waived.  *Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024).  Courts must consider subject matter jurisdiction *sua sponte*.  *Id.* (citing *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 548 (2019).

**A. Natavia Garner must show cause why her counterclaims should not be dismissed for lack of subject-matter jurisdiction.**

Pro se Defendant Natavia Garner alleges that this Court has jurisdiction over her counterclaims under 28 U.S.C. § 1367, which provides supplemental jurisdiction to adjudicate claims relating to an original federal claim, Doc. [196] at 1, but  Plaintiff's claims against Garner

---

[25] *See, e.g.*, *Nguyen v. Savage Enters.*, 2025 WL 679024, at *1 (E.D. Ark. Mar. 3, 2025) ($1,000 sanction for citing nonexistent authority); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) ($5,000); *Wadsworth v. Walmart Inc.*, 2025 WL 608073, at *8 (D. Wyo. Feb. 24, 2025) ($3,000 and $1,000); *United States v. Hayes*, 2025 WL 235531, at *15 (E.D. Cal. Jan. 17, 2025) ($1,500).

[26] *See, e.g.*, *Turnage*, 2025 WL 3052638, at *3 ("Summary dismissal of this lawsuit is not an adequate deterrent; as explained above, this lawsuit is subject to summary dismissal anyway. Turnage cannot afford monetary sanctions and is unlikely to pay any sanction I might impose.")

[27] *See, e.g.*, *Mills v. City of St. Louis*, 2026 WL 251781, at *3 (E.D. Mo. Jan. 30, 2026) (dismissing claims with prejudice as sanction, finding it proper "if for no other reason than that it independently warrants dismissal of this action with prejudice; *see also United States v. Files*, 63 F.4th 920, 935 n.4 (10th Cir. 2023) (Newson, J., joined by Tjoflat, J., concurring) (when district courts provide "redundant decisional grounds," it can "meaningfully increase judicial efficiency"); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002) (Posner, J.) ("Even dismissal with prejudice wouldn't be much of a sanction unless the plaintiff's suit was a winner, or at least had some settlement value, which it may not have had.").

43

have now been dismissed.  Consequently, Garner's claims must satisfy the requirements of the diversity jurisdiction statute on their own for this Court to have subject matter jurisdiction over them.  28 U.S.C. § 1332(a).  Garner provides a Detroit, Michigan, address and Plaintiff is a citizen of Missouri, suggesting that complete diversity exists, but Garner's allegations regarding the required amount in controversy required for diversity jurisdiction merit further scrutiny.

Garner brings counterclaims against Plaintiff for defamation, emotional distress, invasion of privacy, tortious interference with prospective business relations, civil conspiracy, harassment, and abuse of process and deceptive litigation practices.  Doc. [196].  The facts at the heart of Garner's allegations involve (1) statements Plaintiff made in her filings to the Court, *see, e.g.*, Doc. [196] ¶¶ 10-11, 14 (citing Amended Complaint); (2) a process server's attempts to serve her, *see, e.g., id.* ¶¶ 30-31 ("Counterclaimant believes these surveillance and service tactics were not conducted in good faith for legal process, but instead under the guise of service as a method of harassment."); and (3) "harassing text messages and video calls from anonymous or spoofed numbers that were later marked as disconnected," which she attributes to Plaintiff, *id.* ¶¶ 16-17.

Garner reports that she has suffered "severe emotional distress, anxiety, and humiliation" and "severe damages to her personal and professional reputation" and "severe loss of income by subscribers unsubscribing due to online smear campaign launched by Counter-defendant and her associates." *Id.* ¶ 12.  Garner provides no specific information supporting her claimed damages, but she requests injunctive relief, "judgment in her favor on all counts of at minimum $75,000," and "compensatory and punitive damages in an amount to be determined at trial." *Id.* at 13.  Further, Garner requests "attorney/legal fees and costs associated with travel expenses (if applicable)." *Id.*

Garner is self-represented, brings claims under causes of action that do not typically allow for recovery of attorneys' fees, and has not been required to travel for purposes of this action.  In addition, her claims involve statements made during judicial proceedings, which are absolutely privileged.  *See, e.g.*, *Henry v. Halliburton*, 690 S.W.2d 775, 780 (Mo. banc. 1985); *BlueLine Rental, LLC. v. Rowland*, 2020 WL 1915252, at *5 (E.D. Mo. Apr. 20, 2020) ("defamatory matter *contained in pleadings* filed according to law in a court having jurisdiction, *if relevant and pertinent to the case*, is absolutely privileged, and it is immaterial that the allegations are false and maliciously made." (quoting *Laun v. Union Elec. Co. of Mo.*, 166 S.W.2d 1065, 1069 (Mo. 1942))); *Trachsel v. Two Rivers Psychiatric Hosp.*, 883 F. Supp. 442,

44

443 (W.D. Mo. 1995) (applying absolute litigation privilege from Restatement (Second) of Torts § 586).

The Court is therefore concerned that the amount in controversy may not exceed the $75,000 threshold for bringing her claims in federal court.  Garner is ordered to show cause by April 17, 2026, why her counterclaims should not be dismissed for lack of subject matter jurisdiction, bearing in mind that she may not recover for statements made during judicial proceedings or statements by individuals other than Plaintiff.

**B.  Marcella Boothe must show cause why her counterclaims should not be dismissed for lack of subject-matter jurisdiction.**

Pro se Defendant Marcella Boothe's counterclaims are similar to Garner's.  Because Plaintiff's claims have all been dismissed, Boothe must also allege an amount in controversy in excess of $75,000 to establish federal jurisdiction over her claims.  Boothe properly alleges complete diversity, as a citizen of Virginia bringing her claims against Plaintiff, a citizen of Missouri.  Doc. [297] at 1.  But the Court finds that has not sufficiently alleged an amount in controversy exceeding $75,000.

Boothe brings counterclaims against Plaintiff for defamation, invasion of privacy, intentional infliction of emotional distress, and abuse of process.  *Id.* at 2-3.  She refers only to actions Plaintiff has taken in this legal action.  *See, e.g.*, *id.* ¶ 5 ("McNeal has filed multiple court pleadings disclosing . . ."); *id.* ¶ 7 ("As a result of McNeal's public court disclosures, . . ."); *id.* ¶ 13 ("McNeal's repeated filing of defamatory and fabricated allegations").  At the end of her three-page counterclaim complaint, she asserts that she has suffered "emotional, reputational, and economic harm" and "extreme emotional distress requiring medical and therapeutic intervention."  *Id.* ¶¶ 17, 14.  Boothe requests "compensatory damages in the amount of $120,000," costs of the action, and other relief as the Court deems just.  *Id.* at 3.  For the reasons stated as to Counterclaim Plaintiff Garner, Boothe is also ordered to show cause by April 17, 2026, why her counterclaims should not be dismissed for lack of subject matter jurisdiction.

**VI.  <u>The claims against Defendants Melissa Scott-Chase and Donovan R. Frison are also dismissed and their clerk's entries of default are set aside.</u>**

A clerk's entry of default has been entered for Defendants Melissa S. Scott-Chase, Doc. [17], and Donovan R. Frison, Doc. [65].  For the reasons discussed above, the Amended Complaint fails to state any claims against Scott-Chase or Frison.  Therefore, the Court finds good cause to set aside the entry of default against Scott-Chase and Frison pursuant to Federal

Rule of Civil Procedure 55(c). *See, e.g.*, *Gibbs v. City of Sikeston*, 2025 WL 2096522, at \*13 (E.D. Mo. July 25, 2025) (citing *Streambend Properties III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349 (D. Minn.), *aff'd* 587 F.App'x 350 (8th Cir. 2014) (setting aside entries of default where the court found plaintiff's claims meritless against the appearing defendants and the same claims were made against the defaulting defendants)).[28] The claims against Scott-Chase and Frison will also be dismissed with prejudice.

CONCLUSION

Plaintiff's claims all fail and will be dismissed with prejudice for the reasons set forth above. All other pending motions will be denied as moot except those pertaining to the still-pending counterclaims.

Accordingly,

**IT IS HEREBY ORDERED** that the motions to dismiss filed by Defendants AT&T, Inc., Doc. [241]; the Oprah Winfrey Network, LLC and Warner Brothers Discovery, Inc, Doc. [280]; Google LLC and YouTube LLC, Doc. [155]; TikTok Inc., Doc. [159]; CRK Entertainment Inc. and Kingdom Reign Entertainment LLC, Doc. [284], the Orlando Police Department, Doc. [216]; Anthony Lofties, Doc. [143]; Felicia Moore, Doc. [144]; Natavia Garner, Doc. [148]; Marcella Boothe, Doc. [202]; Joann Jenkins, Doc. [210]; Maurice Scott, Doc. [244]; and Carlos King, Doc. [286], are **GRANTED**.

**IT IS FURTHER ORDERED** that all of the claims set forth in the Amended Complaint, Doc. [112], are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** the entries of clerk's default against Donovan R. Frison, Doc. [65], and Melissa S. Scott-Chase, Doc. [17], are set aside and the claims against Frison and Scott-Chase are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Sierra L. Moore and Natavia T. Garner are dismissed for insufficient service.

---

[28] *See also Tunstall v. Perry*, 2018 WL 1320265, at \*4 (M.D.N.C. Jan. 5, 2018), *report and recommendation adopted*, 2018 WL 1311532 (M.D.N.C. Mar. 13, 2018), *aff'd*, 735 F. App'x 75 (4th Cir. 2018) (setting aside entry of default because plaintiff failed to state a valid claim against the defaulting defendant); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385–86 (7th Cir. 2008); *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1267 (11th Cir. 2003) (recognizing authority of court to *sua sponte* set aside an entry of default).

**IT IS FURTHER ORDERED** that, <u>**no later than April 17, 2026**</u>, Plaintiff shall show cause why she should not be sanctioned under Federal Rule of Civil Procedure 11(b) for the reasons set forth herein.

**IT IS FURTHER ORDERED** that <u>**no later than April 17, 2026**</u>, Counterclaim Plaintiffs Natavia Garner and Marcella Boothe shall show cause why their counterclaims, Docs. [196], [297], should not be dismissed for lack of subject matter jurisdiction.

**IT IS FINALLY ORDERED** that the following motions are **DENIED as moot**:  Docs. [149], [165], [170], [191], [192], [222], [229], [260], [290], [294], and [309].

Dated this 31st day of March, 2026.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE